**Royal G. BOUSCHOR, Appellant,**

v.

**UNITED STATES of America,** Appellee.

No. 16976.

United States Court of Appeals Eighth Circuit.

April 22, 1963.

Rehearing Denied May 20, 1963.

Joseph B. Johnson of Reavill, Jenswold, Neimeyer and Johnson, Duluth, Minn., and Patrick J. McNulty, Duluth, Minn., made argument for appellant and filed brief.

Burton Berkley, Atty., Dept. of Justice, Washington, D. C., made argument for the United States and Louis F. Oberdorfer, Asst. Atty. Gen., Washington, D. C., and Meyer Rothwacks, Joseph M. Howard and Burton Berkley, Attys. Dept. of Justice, Washington, D. C., and Miles W. Lord, U. S. Atty., Minne-

apolis, Minn., and Patrick J. Foley, Asst. U. S. Atty., Minneapolis, Minn., on the brief.

Before SANBORN and BLACKMUN, Circuit Judges, and REGISTER, District Judge.

BLACKMUN, Circuit Judge.

The district court has denied the petition of Royal G. Bouschor for an order (a) discharging an earlier ex parte order which granted the government's application for the enforcement of an Internal Revenue Service summons served upon Bouschor and (b) quashing that summons. 200 F.Supp. 541. Bouschor has appealed.

The appellant is a Duluth lawyer. For over twenty years he has represented the taxpayer A. G. O'Brien, proprietor of a plumbing and heating company. Until the present case developed, however, he had done no tax work for this client. N. A. Stillman, a certified public accountant of Duluth in partnership with Oscar Oase, was employed by O'Brien in 1955 "principally for the purpose of taking care of his federal and state income tax matters". Stillman prepared O'Brien's federal and state returns for the taxable-calendar years 1955–1959 inclusive. In so doing Stillman reviewed O'Brien's books and records and prepared work sheets.

The chronology is pertinent:

a. Internal Revenue Agent Kaufer audited O'Brien's income tax returns for 1953–1955 inclusive. He conferred with the taxpayer in December 1955 and examined some canceled checks and bank statements. He also saw Stillman and reviewed the work papers on several occasions. He did not otherwise probe beyond the work papers themselves. As a result of the Kaufer audit tax deficiencies and penalties were assessed for 1953 and 1954. These were paid. The adjustment for 1954 resulted in an over-assessment for 1955 and a refund.

b. Internal Revenue Agent Falconer audited the O'Brien returns for 1956–1959 inclusive. He discussed these with the taxpayer but saw no files or records. He also discussed the returns several times with Stillman and Oase and they even gave him an office in which to work. He reviewed the work papers for those years and saw these papers on three or four occasions. He also saw withholding and employment tax records, checked the social security breakdown and saw the check register for at least some of the years. He proposed no deficiency for 1956 but did propose one for 1957. It was paid. He did not complete his audit for 1958 and 1959 because, while he was still working on it in November 1960, the file was transferred to the Intelligence Division which concerns itself with situations of suspected fraud.

c. In the fall of 1960 O'Brien consulted Bouschor concerning his federal income tax matters. Bouschor in turn consulted Stillman and Oase.

d. On December 5, 1960, Bouschor wrote these accountants stating that the taxpayer had instructed him to ask them to send him all O'Brien papers and records. O'Brien also had instructed the accountants to this effect. Stillman and Oase promptly complied with the request and delivered to Bouschor the documents they possessed and the work papers they had prepared. These have been in Bouschor's possession continuously since that time except for one occasion in early 1961 when Oase had them for a day or two as he was preparing O'Brien's 1960 returns, and except for their being in the possession of Bouschor's own attorneys. Oase looked at these papers a number of times in Bouschor's office.

e. Special Agent Kosowski conducted the continuing audit by the Intelligence Division. In February 1961 he conferred with Oase and asked for the work papers. Oase told him they had been turned over to Bouschor, that he did not know if he would get them back, and that if he did he would furnish them.

f. In June 1961 Kosowski served on the appellant Bouschor a summons to produce all work papers and other material which he had received from Oase or Stillman relating to O'Brien's federal in-

come tax liability for 1954 through 1959. This was stated to be pursuant to the authority of § 7602 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 7602. Bouschor appeared in response to that summons and was accompanied by Oase and by attorneys representing O'Brien and Bouschor. He had the papers with him but stated that he was not going to comply with the request in the summons because the papers were privileged, because they had already been examined, because it would violate the Fifth Amendment's privilege against self-incrimination on the part of O'Brien, and because it would violate the Fourth Amendment's guaranty against unreasonable searches and seizures.

g. This action was then instituted. The United States attorney filed an application for the enforcement of the summons and the district court issued its ex parte order commanding Bouschor to comply. Before the return date Bouschor filed his petition to discharge that order and to quash the summons. A hearing followed. Bouschor's petition was denied and he was directed to produce the materials specified in the earlier ex parte order.

The district court found, p. 542 of 200 F.Supp., that the documents in question were records of the taxpayer of the kind required by § 6001 of the 1954 Code.[1] It held that their examination was authorized under § 7602; that this authority to examine was not violative of either the Fourth or the Fifth Amendments; that the taxpayer could be lawfully compelled to surrender records for examination; and that their transfer to his attorney did not give rise to the attorney-client privilege.

1. *Three government's concessions.* We are met at the outset with certain concessions on the part of the government. The first is that the "summons in question was intended to obtain nothing from him [Bouschor] except the work

papers, etc., prepared by the accountants, Stillman & Oase" and that it "did not direct appellant to produce the personal records of the taxpayer, O'Brien, which the accountants turned over to appellant". The second is "that Section 6001 does not apply to the work papers of an accountant who prepares a taxpayer's return, and that the reason upon which the District Court based its order of enforcement is incorrect". The third is that the record establishes "rightful indefinite possession" of the work papers in Bouschor. These concessions obviously tend to simplify the issues.

2. *The finality of the district court's order.* We are also met at the outset with the government's claim that the order from which the appeal is taken "is probably interlocutory and non-appealable" under 28 U.S.C. § 1291. Because this suggestion goes to jurisdiction, it must be disposed of first.

The government's argument here is that we are concerned with "a contempt proceeding *ab initio*"; that this is indicated by the language of § 7604(b) of the 1954 Code which authorizes application to a district judge "for an attachment * * * as for a contempt"; that punishment is authorized by the statute for "contempt of the *summons* itself, rather than contempt of any subsequent *court order*"; that this differentiation is justified by the legislative history, particularly as it has to do with the enactment of § 7604(b)'s original predecessor which was part of § 14 of the Revenue Act of June 30, 1864, 13 Stat. 226, and with the amendment of that section by § 9 of the Act of July 13, 1866, 14 Stat. 101, and as that history is disclosed in 65 Congressional Globe, 2440–41 and 2660–61, and in 66 Congressional Globe 2997; that if the enforcement of an Internal Revenue summons under § 7604(b) is no more than a step in a single contempt proceeding, the only final and appealable order is the one which imposes punish-

1. "Every person liable for any tax imposed by this title, or for the collection thereof, shall keep such records, render such statements, make such returns, and comply with such rules and regulations as the Secretary or his delegate may from time to time prescribe. * * *"

ment; that an order which merely compels compliance is interlocutory and not appealable; and that a rule of non-appealability is consistent with the need for speed in the assessment and collection of federal taxes.

Whether the order is final and hence appealable depends, it seems, on whether it corresponds with the type of order held appealable in Ellis v. I.C.C., 1915, 237 U.S. 434, 35 S.Ct. 645, 59 L.Ed. 1036, or with that kind held not to be final in Alexander v. United States, 1906, 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686, and Cobbledick v. United States, 1940, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783.

This question of appealability has been presented to this court at least twice in the past although the formal opinions do not disclose that the legislative history was urged here in support of the government's position. Over thirty years ago, in Brownson v. United States, 8 Cir., 1929, 32 F.2d 844, the court itself raised the question of jurisdiction. The district court had ordered a Western Union superintendent to appear before a revenue agent and produce records showing a taxpayer's receipt of telegraphed funds. This court said, p. 846 of 32 F.2d, "That such an order is appealable we think is established", and cited Ellis and other cases in support of that statement. In Sale v. United States, 8 Cir., 1956, 228 F.2d 682, cert. denied 350 U.S. 1006, 76 S.Ct. 650, 100 L.Ed. 868, the district court had ordered an attorney to appear before a revenue agent and produce work papers prepared by an accountant for taxpayer-clients of the lawyer. We said, p. 683 of 228 F.2d, "It would seem that the order appealed from is a final order and that an appeal lies".

All other courts of appeals which have touched upon the question appear, with one exception, to be in accord. O'Connor v. O'Connell, 1 Cir., 1958, 253 F.2d 365–367; Lash v. Nighosian, 1 Cir., 1959, 273 F.2d 185, 186, cert. denied 362 U.S. 904, 80 S.Ct. 610, 4 L.Ed.2d 554; In re Albert Lindley Lee Memorial Hosp., 2 Cir., 1953, 209 F.2d 122, 123, cert. denied 347 U.S. 960, 74 S.Ct. 709, 98 L.Ed.

1104; Application of Colton, 2 Cir., 1961, 291 F.2d 487, 490–491; United States v. McDonald, 2 Cir., 1963, 313 F.2d 832, 834; United States v. Silverstein, 2 Cir., 1963, 314 F.2d 789; Falsone v. United States, 5 Cir., 1953, 205 F.2d 734, 737, cert. denied 346 U.S. 864, 74 S.Ct. 103, 98 L.Ed. 375. See Martin v. Chandis Securities Co., 9 Cir., 1942, 128 F.2d 731, 734, where, however, the appeal was from an order denying rather than directing compliance. See also, where appealability seems to have been assumed *sub silentio*, First National Bank of Mobile, Ala. v. United States, 1925, 267 U.S. 576, 45 S.Ct. 231, 69 L.Ed. 796, affirming 5 Cir., 295 F. 142; Wall v. Mitchell, 4 Cir., 1961, 287 F.2d 31; Eberhart v. Broadrock Development Corp., 6 Cir., 1961, 296 F.2d 685, cert. denied 369 U.S. 871, 82 S.Ct. 1139, 8 L.Ed.2d 275; In re Fahey, 6 Cir., 1961, 300 F.2d 383. Compare Chapman v. Goodman, 9 Cir., 1955, 219 F.2d 802, where the district court had reserved jurisdiction.

The Seventh Circuit holds otherwise. That court first announced its position in Jarecki v. Whetstone, 1951, 192 F.2d 121, 124, citing Alexander and Cobbledick, both supra. The First Circuit in O'Connor v. O'Connell, supra, p. 367 of 253 F.2d, rejected Jarecki as authority because the court had reached its conclusion "without any notice of the Ellis case". However, the Seventh Circuit has reaffirmed its position in Application of Davis, 1962, 303 F.2d 601, stating that, in United States v. Vivian, 1955, 217 F.2d 882, cert. denied 350 U.S. 953, 76 S.Ct. 340, 100 L.Ed. 830, it had pointed out that the rationale of Jarecki was grounded on the nature of the specific statutory provision involved. We note that certiorari has been granted in the Davis case, sub nom. Davis v. Soja, 371 U.S. 810, 83 S.Ct. 45, 9 L.Ed.2d 53, so further assistance on this point may soon be forthcoming.

The government urges the Seventh Circuit cases upon us and suggests that we reconsider the reasoning in Brownson v. United States, supra. At this late date and with the last Seventh Circuit case

now pending in the Supreme Court, we are disinclined to do this. We reaffirm the conclusions this court reached in both Brownson and Sale and hold that the district court's order here is a final one and is appealable.

■ 3. *The attorney-client privilege.* Bouschor's first point on the merits is that the work papers in question were privileged communications between him and his client O'Brien and that the attorney-client privilege is applicable to prevent their review by the Service.

We think the point is not well taken. We note that, concededly, (a) the (work papers were prepared by the accountants and not by the taxpayer; (b) they were in existence prior to Bouschor's appearance in the case as attorney for the taxpayer; and (c) they had already been reviewed by agents Kaufer and Falconer. Under these circumstances we feel it is unnecessary to decide whether, in connection with an Internal Revenue Service investigation, the privilege is one to be determined under federal law, as the government suggests, citing Falsone v. United States, supra, 5 Cir., 205 F.2d 734, 741–742, and In re Albert Lindley Lee Memorial Hosp., supra, 2 Cir., 209 F.2d 122, 123, to which we may add Colton v. United States, 2 Cir., 1962, 306 F.2d 633, 636, cert. denied 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499, or under Minnesota law, Minnesota Statutes Annotated § 595.02,[2] as Bouschor urges, citing Baird v. Koerner, 9 Cir., 1960, 279 F.2d 623, 632, a case with which the Second Circuit, in Colton v. United States, supra, says flatly, "we do not agree", for we conclude that the result must be the same under either standard. Compare United States v. Summe, E. D. Ky., 1962, 208 F.Supp. 925, 926–927.

■ a. Clearly if the work papers were the property of the accountants in

the sense that they were owned by them and not by the taxpayer or Bouschor, no claim of privilege could prevail. This court specifically so held in Sale v. United States, supra, p. 686 of 228 F.2d, where an attorney having possession of an accountant's work papers was asserting the privilege. In accord are In re Fahey, supra, 6 Cir., 300 F.2d 383, 385, affirming D.C., 192 F.Supp. 492, 495, and United States v. Boccuto, D.N.J., 1959, 175 F. Supp. 886, appeal dismissed, 3 Cir., 274 F.2d 860. The district court made no finding as to ownership of these papers and on this record we are not fully assured as to their ownership after the delivery by the accountants to Bouschor. When Bouschor wrote the accountants for the papers he asked only "if you would send me all of the papers". Both Stillman and Oase in their affidavits say merely that they have "relinquished their right(s) to the return or possession of" them, and we have already noted that the government concedes that rightful indefinite possession of the papers was in Bouschor. But these statements, singly or in the aggregate, do not specifically deny the accountants' ownership. They are directed rather to possession. Is a trier of fact to imply from them that ownership remains in the accountants or that they have abandoned any property interest in them, or that title in some way has leaped to O'Brien or to Bouschor? Because one claiming the privilege has the burden of establishing it, United States v. Kovel, 2 Cir., 1961, 296 F.2d 918, 923; Brown v. St. Paul City Ry., 1954, 241 Minn. 15, 34–35, 62 N.W. 2d 688, 701; State v. Anderson, 1956, 247 Minn. 469, 477, 78 N.W.2d 320, 326; Mattson v. Cuyuna Ore Co., D. Minn., 1959, 178 F.Supp. 653, 654, we have no hesitancy in concluding that this burden has not adequately been sustained here.

2. 595.02. "Every person of sufficient understanding, including a party, may testify in any action or proceeding, civil or criminal, in court or before any person who has authority to receive evidence, except as follows: * * *

"(2) An attorney cannot, without the consent of his client, be examined as to

any communication made by the client to him or his advice given thereon in the course of professional duty; nor can any employee of such attorney be examined as to such communication or advice, without the client's consent; * * *."

Compare United States v. Boccuto, supra, pp. 888 and 890 of 175 F.Supp., where an accountant's affidavit stated that he had turned work papers over to counsel "with no intention of retention or any title or belief that I can get them back", and the court held there was no clear demonstration that the work papers were the property of the taxpayers "despite the affidavit filed herein". We need not decide what the situation would be if the work papers were clearly shown to be the property of the taxpayer or of Bouschor. See Application of House, N.D.Cal., 1956, 144 F.Supp. 95.

■ b. In any event, in order for the privilege to be invoked, the communication must have been one between attorney and client and it must have been made in confidence. These are two among several essentials described in 8 Wigmore, Evidence, § 2292 (McNaughton Rev. 1961). More specifically,

"[I]f an unprivileged document exists before there exists an attorney-client relationship the mere delivery of the document to an attorney does not create a privilege * * *

"One of the essentials of a privileged communication is that it be confidential." Brown v. St. Paul City Ry., supra, pp. 33–34 of 241 Minn., p. 700 of 62 N.W.2d;

Grant v. United States, 1913, 227 U.S. 74, 79, 33 S.Ct. 190, 57 L.Ed. 423. The work papers here were prepared by the accountants in their analytical work. They were preexisting and they had already been reviewed by agents. These two essential elements were therefore absent. Application of House, supra, pp. 97–98 of 144 F.Supp. The delivery of the papers to the attorney does not create the privilege when it did not theretofore exist. Falsone v. United States, supra, p. 739 of 205 F.2d; In re Colton, S.D. N.Y., 1961, 201 F.Supp. 13, 17, affirmed

sub nom. Colton v. United States, supra, 306 F.2d 633, 639.

4. *The Fourth Amendment and § 7605 (b).* Bouschor's argument is that he is O'Brien's agent; that the Service had many opportunities to review the work papers; that agents Kaufer and Falconer in fact had examined those papers or most of them; that the government failed to sustain its burden under § 7605(b) of the 1954 Code, 26 U.S.C.A. § 7605(b) [3] of proving the necessity of a further examination; that the notice required by this statute was not given O'Brien; and that an unnecessary examination is an unreasonable search within the proscription of the Fourth Amendment.

■ We think the short answer, so far as § 7605(b) is concerned, is that Bouschor is not the person protected by the statute and that the work papers are not its subject. The section relates to a taxpayer and to a taxpayer's books of account. It does not refer to a third person other than the taxpayer or to work papers prepared by accountants. The restrictions imposed by § 7605(b) therefore have no application to Bouschor and the papers the special agent desires to examine. In Hubner v. Tucker, 9 Cir., 1957, 245 F.2d 35, 38–39, the court said:

"As to the first question, the learned trial judge was correct in holding that § 7605(b) did not apply here. It was held that the 'taxpayer' referred to in that section is the one whose return is under investigation." (footnote omitted)

In Application of Magnus, 2 Cir., 1962, 299 F.2d 335, 336, cert. denied 370 U.S. 918, 82 S.Ct. 1556, 8 L.Ed.2d 499, the statute was under consideration and it was said:

"The examination which IRS seeks is of third parties and not a further examination of the taxpayer. The inspection desired is of corporate

---

3. § 7605(b). "No taxpayer shall be subject to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary or his delegate, after investigation, notifies the taxpayer in writing that an additional inspection is necessary."

books and accounting firm papers and not of the taxpayer's books. Under these circumstances, the taxpayers have no standing to quash the summonses which call neither for their further appearance or examination nor for further production of their books."

Compare In re Magnus, Mabee & Reynard, Inc., 2 Cir., 1962, 311 F.2d 12, 17, cert. denied 83 S.Ct. 1289. We do not regard the comments in the earlier Ninth Circuit cases of Martin v. Chandis Securities Co., supra, pp. 735–736 of 128 F.2d, and Local 174, etc. v. United States, 1956, 240 F.2d 387, 390–391, and in First Nat. Bank of Mobile v. United States, 5 Cir., 1947, 160 F.2d 532, 534–535, as opposing authority. In any event, the Second Circuit's observation, p. 337 of 299 F.2d, in Application of Magnus, supra, is pertinent:

"We have reviewed the many cases cited by both parties. Because of the special circumstances of each case, they are not particularly helpful. Where the statute is clear, it is frequently unwise to try to construe it in accordance with language, used in opinions in other cases, which applies most pertinently only to the facts of those cases."

■■ The Fourth Amendment argument, we feel, must fall with that relating to the attorney-client privilege. Of course, a lawyer may assert a constitutional privilege on behalf of his client in a proceeding of this kind when the client is a party, Brody v. United States, 1 Cir., 1957, 243 F.2d 378, 387, cert. denied 354 U.S. 923, 77 S.Ct. 1384, 1 L.Ed. 2d 1438, or when the production of the papers demanded would violate the attorney-client privilege, Schwimmer v. United States, 8 Cir., 1956, 232 F.2d 855, 863–866, cert. denied 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52; Colton v. United States, supra, p. 639 of 306 F.2d. But here O'Brien is not a party and had not intervened or appeared and we have held that the privilege does not exist. The search claimed to be unreasonable does not have to do with O'Brien. It has to do with Bouschor, who is himself represented by counsel, and with the work papers which had been turned over to him. There is no claim that the search is unreasonable as to Bouschor. He claims immunity only in a representative capacity. And we are not confronted here with a claim of too much indefiniteness or breadth, which has been characterized as the abuse to which the Fourth Amendment is directed. See Oklahoma Press Pub. Co. v. Walling, 1946, 327 U.S. 186, 208, 66 S.Ct. 494, 90 L.Ed. 614.

■ *5. The Fifth Amendment.* Bouschor claims the right to assert on behalf of O'Brien the Amendment's protection against self-incrimination. He cites Application of House, supra, N.D. Cal., 1956, 144 F.Supp. 95. That case does indeed involve facts similar to those here. It is authority against Bouschor's position on the attorney-client issue and on the Fourth Amendment issue but it is favorable to him with respect to the Fifth Amendment. Directly opposing the House case is United States v. Boccuto, supra, D.N.J., 1959, 175 F.Supp. 886. There the court observed that House was on "all fours", that the taxpayers were not parties, and that it "must disagree with the conclusions" reached in House.

■ On this point we agree with Boccuto and disagree with House. We realize that the Fifth Amendment's provision against self-incrimination "must be accorded liberal construction in favor of the right it was intended to secure". Hoffman v. United States, 1951, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118; Counselman v. Hitchcock, 1892, 142 U.S. 547, 562, 12 S.Ct. 195, 35 L.Ed. 1110. But the guarantee against self-incrimination has long been characterized as a personal privilege of the witness. "It was never intended to permit him to plead the fact that some third person might be incriminated by his testimony, even though he were the agent of such person". Hale v. Henkel, 1906, 201 U.S. 43, 69–70, 26 S.Ct. 370, 377, 50 L.Ed. 652; McAlister v. Henkel, 1906, 201 U.S. 90, 91, 26 S.Ct. 385, 50 L.Ed. 671; United States v.

White, 1944, 322 U.S. 694, 704, 64 S.Ct. 1248, 88 L.Ed. 1542; In re Fahey, supra, p. 385 of 300 F.2d. This, it seems to us, is determinative of the Fifth Amendment argument.

We note also, for what it may be worth, that Bouschor knew that the appearance of a Special Agent indicated that O'Brien's returns were being investigated for fraud, that it was Bouschor who, as he pleaded, "directed said client to cause to be turned over to him all work papers" and that in consequence thereof the papers were delivered. This, although proper and necessary or at least desirable for Bouschor's representation of his client, cannot in itself serve to thwart investigation by the Internal Revenue Service. Compare Schwimmer v. United States, 8 Cir., 1956, 232 F.2d 866, 868, cert. denied 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52.

We therefore conclude that, although its reasoning in certain respects is concededly inapplicable on the agreed facts, the district court's denial of Bouschor's petition for an order discharging the earlier ex parte order and quashing the subpoena was correct.

Affirmed.