**Wilfred W. BAUER, Special Agent, Internal Revenue Service, Petitioner,**

v.

**Lloyd ORSER, Respondent.**

**Civ. No. 743.**

United States District Court
D. North Dakota,
Southwestern Division.

Aug. 31, 1966.

John O. Garaas, U. S. Atty., Fargo, N. D., for petitioner.

Robert Vogel and Larry Kraft, of Vogel & Bair, Mandan, N. D., for respondent.

## MEMORANDUM AND ORDER

REGISTER, Chief Judge.

This proceeding was instituted by Petitioner for the enforcement of Internal Revenue summonses, under the authority of Section 7604, Title 26, U.S.C.A. Petitioner is a Special Agent of the Intelligence Division, Internal Revenue Service, and as such is authorized to issue and serve Internal Revenue summons by virtue of the provisions of Sections 7602 and 7603, Title 26, U.S.C.A. Respondent is a Certified Public Accountant, practicing his profession in Bismarck, North Dakota. On January 22, 1965, the two summonses here involved were issued by Petitioner and by him served upon Respondent during the course of an official investigation Petitioner was then conducting into the matter of the federal income tax liability of Kenneth W. Peterson and Lois A. Peterson, Carson, North Dakota, for the calendar years 1960 through 1963, inclusive. The summonses were issued and served in aid of that investigation.

Hearing on the petition for enforcement was had before this Court on March 24, 1966. Transcript of the testimony adduced at the hearing was subsequently prepared and filed, and the matter has been fully briefed by the parties. The Court has carefully re-examined the evidence—including the testimony and evidence—and has considered the briefs, and finds and concludes as is hereinafter stated. It should be noted that the essential facts are undisputed.

Robert Vogel is an attorney at law practicing his profession in Mandan, North Dakota. He is the senior partner

of the firm Vogel and Bair. He is a general practitioner, doing very little tax work and no accounting. In June, 1964, Mr. Vogel was consulted by Kenneth W. Peterson and Lois A. Peterson (hereinafter referred to as Petersons) with reference to their United States income taxes for the years 1960 to 1963, inclusive. The uncontradicted testimony of Vogel is that, after being retained to represent the Petersons in June, 1964, "I told Mr. Orser (Respondent) that I had some clients that had come to me on a tax matter and that I didn't understand accounting well enough to do the accounting angle myself and I wanted to retain Mr. Orser to assist me by doing accounting work for me so that I could properly advise the Petersons, and he said that he would do so, and I told him I would send the people over to see him, and I did." This testimony is corroborated, in substance, by Orser. It is patently clear that, prior to the time Petersons called to see Orser, Orser had been employed by Vogel, on behalf of his firm, for the stated purpose; namely, to assist Vogel " * * * by doing accounting matters so that I (Vogel) could properly advise the Petersons as to their legal rights." It is further established by the undisputed evidence that Vogel gave to Orser special instructions regarding the nature of the services to be performed by Orser, and that he (Vogel) gave to the Petersons instructions concerning the relationship of the taxpayers with Orser—that is, to consider that their (Petersons) disclosures to Orser were confidential in nature, the same as though made to their lawyer, Vogel.

Orser was informed, at the time of his employment by Vogel, that Petersons would bring their records to Orser's office, and he was also instructed by Vogel that when he (Orser) was through with his examination of the records he was to make his report to Vogel, and that Vogel would then decide whether or not amended returns for the years involved should be prepared and filed. Petersons did thereafter deliver their records to Orser. During the period of Orser's employment by Vogel, Petersons and Orser conferred and communicated with each other, Vogel and Orser conferred from time to time, and on occasions all three parties conferred. Upon completion of Orser's examination and his report, Vogel concluded that amended returns for the years 1960 through 1963 should be prepared and filed. Such amended returns were thereupon prepared by Orser, delivered to Vogel (pursuant to Vogel's instructions), and subsequently filed with the Director of Internal Revenue at Fargo, North Dakota, in November, 1964. Throughout the time Orser was performing the service requested by Vogel, he was in possession of the records belonging to Petersons'. Such records consisted of cancelled checks, bank deposit slips, a ledger book listing the checks, copies of Petersons' original tax returns, and the deposit books and cancelled checks and check stubs of Petersons' trust account, and were all referred to by Orser during the course of his preparing the amended returns. Prior to the time of the service of the summonses here involved, Orser had prepared workpapers which in substance summarized for each year the information he had gleaned from Petersons' records, and also included copies of correspondence between Orser and Petersons—and notes of telephone conversations—whereby Orser had requested from the Petersons certain explanatory information. Both Vogel and Orser considered that the workpapers, summary sheets, notes, etc., made and prepared by Orser during the performance of his duties of employment, were and are the property of the firm of Vogel and Bair, the employer.

Each of the original returns for the subject years was timely filed; neither Vogel nor Orser had been involved in the preparation or filing of those original returns. In fact, Orser had never seen the Petersons, did not know them, and had done no work for them until they appeared at his office pursuant to the arrangement made by Vogel. The amended returns were each executed on

November 12, 1964, and, as hereinbefore stated, filed with the Internal Revenue Service on November 19, 1964.

On December 8, 1964, Petitioner sent a letter to the taxpayers, requesting that they appear in his office. This was Petersons' first notice that Petitioner was involved in their tax matters. Vogel responded to that letter on December 9, informing Petitioner that he, Vogel, was representing the Petersons. Additionally, on December 8, Petitioner had his first contact with Orser, when he and Agent Nelson called at Orser's office. At that time Petitioner got a brief glance at some of Orser's workpapers, but did not examine them. Also, at that time, all of the Petersons' records were in Orser's possession; the amended returns, as heretofore stated, had previously been filed. During this visit, Orser was served with a summons (not the summons here involved), by Petitioner, directing Orser to appear at Petitioner's office on December 21, 1964, and to bring with him certain described records belonging to Petersons. On that date Orser did appear at said office with the requested documents and with his attorney (Bruce Bair, Vogel's partner), but refused to produce the papers on the advice of his counsel, who claimed the attorney-client privilege would be violated by such production, and on the further ground of Peterson's self-incrimination.

After Vogel had informed Petitioner by letter on December 9 that he (Vogel) represented Petersons, Petitioner responded " * * * that their practice was that they would deal with the taxpayer until such time as an attorney or other persons filed a power-of-attorney with them, and, therefore, he would continue to deal directly with the Petersons." Thereafter, in January, 1965, Vogel did file with the Internal Revenue Service several powers of attorney—one from each of the Petersons for each of the years involved.

On December 31, 1964, Orser billed the firm of Vogel and Bair for all of his services here involved. The fee charged was a " * * * flat fee covering every-thing," and payment was made by the firm's check on January 21, 1965. At the time of Orser's employment by Vogel there was no discussion regarding the fee, since Vogel was familiar with Orser's fee schedule and knew the charge would be based upon time spent on the job. Orser had previously done work for the firm of Vogel and Bair.

On January 22, 1965, Petitioner served upon Orser the two summonses here involved, whereby Respondent was required to appear before Petitioner at his office on February 2, 1965, and to bring with him certain described documents. One summons required Orser to bring with him

"All books, records, papers, memoranda, or other documents of Kenneth W. Peterson and Lois A. Peterson in your possession or subject to your control for use in preparing their 1960, 1961, 1962, and 1963 original and amended federal income tax returns,"

and the second summons required Respondent to produce

"All of Paul McCann and Company and Lloyd Orser's workpapers in your possession or subject to your control used in the preparation of the 1960, 1961, 1962, and 1963 original and amended federal income tax returns of Kenneth W. Peterson and Lois A. Peterson."

Vogel thereupon wrote Petitioner and informed him that he could not be present on February 2 due to a scheduled court appearance, and requested a later date be substituted. In reply, Vogel was informed that Petitioner would be in his office on February 1, on which date Orser and Vogel appeared. Orser then had in his possession a box containing all of the enumerated records and documents but refused to produce them for the Petitioner, and based his refusal upon the advice of his counsel. At that time Vogel informed the Petitioner that " * * * I would direct Mr. Orser not to produce any of the documents described for the reason that I considered any such production would be a violation of the

attorney-client privilege, since I was the attorney for the Petersons and these were their papers and I had hired Mr. Orser to assist me and, therefore, he was working as an assistant to an attorney in the case, and I felt that the attorney-client privilege applied. Also, on behalf of the Petersons, I claimed the privilege against self-incrimination for the reason that they were being asked to incriminate themselves through their attorney and a man working for their attorney, and * * *".

In November or December, 1965, Petersons called at Orser's office, at which time, pursuant to Petersons' request, he delivered to them the complete Peterson file, including all of the records and documents hereinbefore referred to. Such delivery was made by Orser only after he secured instructions and legal advice from Vogel. At the time of delivery Orser had no knowledge of the filing of the within Petition for enforcement. Throughout all the pertinent times involved in these proceedings, Vogel (or Vogel and Bair) has been and is legal counsel for the Respondent as well as for the Petersons.

This enforcement proceeding was instituted by the filing of the within Petition on October 4, 1965. In addition to the oral testimony adduced at the hearing, there were received in evidence Petitioner's Exhibits 1 and 2 (being the two summonses dated and served on January 22, 1965) and Respondent's Exhibit A. Exhibit A is a letter dated March 23, 1966, signed by the Petersons and directed to Vogel. The body of said letter is as follows:

"In connection with the tax matter we have discussed, we hereby claim the privilege against self incrimination as to any and all records of ours and working papers worked on by the accountant, Lloyd Orser, whom you retained in connection with a matter we retained you, and we instruct you, on our behalf, to claim the privilege as to self incrimination on any and all occasions when any attempt might be made by the government to obtain any of such records or working papers.

"We further instruct you, in our behalf, to assert the attorney-client privilege as to any such attempts to obtain access to any such records or working papers or to obtain any testimony as to our affairs from either you or Mr. Orser."

The initial inquiry before the Court is whether any of the documents or papers described in the summonses are exempt from production by reason of being within the attorney-client privilege. Exhibit 1 requires the production of books, records, papers, memoranda and other documents belonging to Petersons and in the possession of Respondent, and Exhibit 2 calls for the production of the workpapers prepared by Respondent.

■ The Court is satisfied—and so finds—that the workpapers prepared by Respondent (described in Exhibit 2), under the facts established in this proceeding, are included within the attorney-client privilege.

It is undisputed that Respondent was employed by Vogel to perform certain specialized and expert services which Vogel was not qualified to perform and which were essential in order that Vogel give the proper legal advice and render proper legal service to his clients, the Petersons. During all the pertinent times Respondent was the agent and employee of Vogel; he submitted his bill to Vogel and Bair, and was paid by that firm. Petersons were assured by Vogel, prior to Respondent's employment, that their communications to Respondent would be confidential—the same as though made to Vogel. Having in mind the facts as hereinbefore stated, it appears that, in this matter, Respondent is in the same position as an accountant who is a regular employee of a law firm engaged in legal work for which such accounting assistance is necessary to the lawyers in the effective performance of their legal services.

The record establishes, to the satisfaction of the Court, that Respondent's serv-

ices were performed as an employee of Vogel and Bair; that the workpapers are the property of Vogel and Bair; that such workpapers contain confidential information secured from the Petersons or their legal counsel; that Respondent's function and employment was to aid Vogel so that he could provide effective and proper legal advice concerning the matters about which he or his firm had been retained by Petersons; and that such information was given by the Petersons pursuant to Vogel's direction and with the understanding and assurance that the same would be kept in confidence. See: United States v. Kovel, 2 Cir., 296 F.2d 918; United States v. Judson, 9 Cir., 322 F.2d 460; and VIII Wigmore on Evidence, Sections 2292 and 2301.

In his brief counsel for Petitioner cites, among others, the case of Bouschor v. United States, 8 Cir., 316 F.2d 451, in support of his argument. Factually, *Bouschor* is so dissimilar to the instant case as to require little comment. In *Bouschor* the accountants had been employed by the *taxpayers* prior to their retaining a lawyer; the accountant's workpapers were in existence *prior* to the existence of an attorney-client relationship between Bouschor and the taxpayer; there was no substantial evidence—and no finding—that the accountant's workpapers were the property of the taxpayer or of Bouschor (the taxpayer's lawyer); and it clearly appeared that the workpapers were not prepared in confidence.

In Deck et al. v. United States el al., D.C.Cir., 339 F.2d 739, also cited by Petitioner's counsel, the Court of Appeals affirmed the trial court's finding that the accountant's workpapers there involved were the property of the accountant, and that the taxpayer (in temporary possession of such papers, although demand therefor had been made by the accountant-owner prior to the issuance of the Internal Revenue summons) who was holding the papers against the owner's demand for their return could not resist production by claim-

ing the privilege against self-incrimination. No such factual situation exists in the instant case.

In order that there be no misunderstanding, the Court will state that, in its opinion, the question presented as number 1 in Petitioner's memorandum, to-wit:

"Are communications made by taxpayers to an accountant which are intended to be disclosed to the Internal Revenue Service, and are in fact so disclosed, protected by an attorney-client privilege as confidential communications?"

is not raised by the facts as disclosed by the evidence and is not before the Court.

Exhibit 1 calls for the production of Petersons' records which had been delivered to Respondent. Some of these items had been negotiable instruments in commerce; some were copies of bank and financial records. All were pre-existing documents and financial records *not* prepared by taxpayers in confidence, or for the purpose of communicating with their lawyer in confidence. These records and documents do not constitute privileged communications within the attorney-client privilege. See: United States v. Judson, supra; Colton et al. v. United States, 2 Cir., 306 F.2d 633; and Falsone v. United States, 5 Cir., 205 F.2d 734, 739.

The question remains—raised and briefed by the parties—whether the taxpayers' Fifth Amendment privilege against self-incrimination has been properly asserted and presented to the Court, with regard to the records and documents described in Exhibit 1.

Petitioner contends that "The privilege against self-incrimination embodied in the fifth amendment is personal to the holder. Therefore, it cannot be asserted by a stranger to vitiate his responsibility to obey the mandate of an internal revenue summons." Further, that

"It may well be that the taxpayers could have petitioned a court to en-

join the accountant from complying with the summons, Reisman v. Caplin, 375 U.S. 440 [84 S.Ct. 508, 11 L.Ed.2d 459]; but they did not elect to do so. Nor have the taxpayers intervened in this proceeding to raise any defense they may have to bar inspection of data clearly relevant to the pending inquiry.

"Consequently, as to Exhibit 2, (sic) there is presented for consideration under the present posture of this action the sole question of whether in this Circuit a respondent may raise a purported Fifth Amendment privilege of another to avoid obedience to the mandate of a Congressional Statute, Section 7602, supra.

"Under the holding in Bouschor v. United States, 316 F.2d 451, 458, such a defense is not available.

> * * * the guarantee against self-incrimination has long been characterized as a personal privilege of the witness. It was never intended to permit him to plead the fact that some third person might be incriminated by his testimony, even though he were the agent of such person. Hale v. Henkel, 1906, 201 U.S. 43, 69–70 [26 S.Ct. 370, 50 L. Ed. 652]; McAlister v. Henkel, 1906, 201 U.S. 90, 91 [26 S.Ct. 385, 50 L.Ed. 671]; United States v. White, 1944, 322 U.S. 694, 704 [64 S.Ct. 1248, 88 L.Ed. 1542]; In re Fahey [6 Cir.], supra, p. 385 of 300 F.2d [383]. This, it seems to us, is determinative of the Fifth Amendment argument."

That part of Petitioner's brief which concerns the law relating to the self-incrimination aspect of this proceeding has been quoted in substantially its entirety, for the reason that it is apparent therefrom that such discussion is confined to very narrow limits and does not cover the situation which remains to be considered, as disclosed by the record.

It appears that Petitioner assumes or contends that the claim of privilege against self-incrimination must be as-serted only in person—that is, by physical presence and voice—in a proceeding or action in which such person is a party or witness, and that a determination of this question by the Court which is favorable to the Petitioner is determinative of the merits. No comment has been made concerning the fact that several months prior to the hearing, all of the records and documents described in Exhibit 1 had been delivered, by the Respondent, to the legal owners thereof. It may be that such omission is due to the fact that the Court was assured by Vogel, at the hearing, that Orser would comply with any order that the Court might enter herein.

Acknowledging *Bouschor*, supra, Respondent challenges the correctness thereof—concerning the point under discussion—and cites Colton, supra; United States v. Judson, supra; Application of House, 9 Cir., 144 F.Supp. 95; and VIII Wigmore on Evidence, Section 2307, in support of his contention that an attorney can assert the claim of privilege against self-incrimination on behalf of his client. The facts in the instant case are somewhat unusual in that not only did the taxpayers' lawyer raise and claim the taxpayers' privilege against self-incrimination (both as to the work-papers prepared by Orser, which are the property of the lawyer, and as to the pre-existing documents and records of the taxpayers), but the lawyer had been expressly directed and authorized by the taxpayers to do so. (See Respondent's Exhibit A.) In addition, the taxpayers had executed and delivered to their lawyer powers of attorney appointing him their attorney-in-fact to take such action.

While the Court recognizes there is authority to the contrary (see, e. g., Brody v. United States, 1 Cir., 243 F.2d 378), *Bouschor* is the law in this Circuit and this Court is bound thereby. It does not necessarily follow, however, that the Petitioner is entitled to the relief he seeks.

At the time of service of the summonses with which we are here concern-

ed (January 22, 1965), Respondent was in possession of the records and documents belonging to Petersons and the workpapers prepared by him in the course of his employment by Vogel. The enforcement petition was filed on October 4, 1965—more than eight months after the appearance of Respondent and his counsel before Petitioner on February 1, 1965. During that period of time Respondent had no legal right to retain the described documents and records; he had no property right therein, or right of possession, except such as continued by virtue of his employment by Vogel. When Petersons called at Respondent's office and asked for the entire file (November or December, 1965), they were legally entitled to immediate possession of their own records and documents, and Respondent had been directed by Vogel to deliver the workpapers (which were legally the property of Vogel) to the Petersons. At that time Respondent had no basis whatever to refuse to comply with Petersons' request and Vogel's directive, since Vogel not only was Respondent's employer, and legal counsel for Petersons, but also Respondent's lawyer. Further, at the time of delivery of the file to Petersons, Respondent was unaware of any action taken by the Internal Revenue Service which would have constituted a basis for his refusing such delivery, and which would have protected him had he made such refusal. On March 24, 1966—the date of hearing—Respondent was in the position of being unable to comply with the summonses, an inability (as shown by the record) which resulted not from any wilful or improper act or conduct on his part, but from following the advice of his lawyer, the directive of his employer, and the demand of the Petersons in asserting their legal rights. During the hearing, the taxpayers presented to the Court—through their retained counsel, Vogel—Respondent's Exhibit A, a document in which they affirmatively and expressly claimed their constitutional privilege against self-incrimination. The genuineness of their signa-

tures is not disputed. While it is true that methods could have been followed whereby the taxpayers—being the parties affected by an ordered disclosure—could have intervened or become parties to the proceeding (Reisman, supra, 375 U.S. at p. 445, 84 S.Ct. 508) for the purpose of personally asserting their rights, it appears that the method employed in this case is, considering the facts and circumstances, relatively unimportant and that, in the protection of such claimed privilege, the Court should and must be primarily concerned with the substance thereof.

By virtue of Exhibit A, the Court has had its attention called to the fact that Petersons have asserted—and do assert—their constitutionally guaranteed privilege against self-incrimination, with regard to the production of subject records and documents. See: Brody, supra, 243 F.2d at page 387.

It has been held that " * * * the person subpoenaed may not decline to testify or to produce a record in his possession because of possible incrimination of a third person. (Citations.) Neither may the owner raise his privilege against self-incrimination, under either amendment, to prevent the production of his private records in the possession of third persons. (Citations.)" United States v. Onassis et al., D.C., S.D.N.Y., 133 F.Supp. 327, 330. However, in this proceeding, the documents sought are in the possession of their lawful owners, and not in the possession of the Respondent or any other "third person," and there presently exists no way in which Respondent can obtain those documents from their owners, lawfully, against the owner's consent. Any order of this Court which would purport to require compliance by the Respondent with the subject summons (Exhibit 1) would require the Respondent to secure possession of the described documents from the legal owners and possessors thereof for a purpose in direct conflict with the privilege against self-incrimination heretofore asserted and claimed by the taxpayers. In the

opinion of this Court, based upon the facts as disclosed by the record herein, such an Order would be not only unenforceable but improper.

For the reasons stated, the petition for enforcement of Internal Revenue summons is, in all things, denied.