UNITED STATES of America and Howard W. George, Special Agent, Internal Revenue Service, Plaintiffs,

v.

Donald E. COTE and Thomas J. Murphy, Defendants.

No. 4–70–Civ. 510.

United States District Court,
D. Minnesota,
Fourth Division.

March 30, 1971.

Stephen G. Palmer, Asst. U. S. Atty., Minneapolis, Minn., Jeffrey D. Snow, Trial Atty., Tax Division, Dept. of Justice, Washington, D. C., for plaintiffs.

John C. Johanneson, Maun, Hazel, Green, Hays, Simon & Aretz, St. Paul, Minn., for defendants.

## MEMORANDUM

LARSON, District Judge.

This action was brought to enforce two summonses issued by Howard W. George, a special agent of the Internal Revenue Service, in connection with his investigation of the income tax liabilities of the taxpayers John and Evelyn Erickson. The summonses were issued under 26 U. S.C. Section 7602 to Donald Cote, a certified public accountant, and Thomas Murphy, a lawyer. This Court has jurisdiction to enforce both summonses under 26 U.S.C. Sections 7402(b) and 7604 (a).

John Erickson is an electrical contractor who operates the Erickson Electric Company in St. Cloud, Minnesota. In early 1969, the Ericksons' tax liabilities came under the scrutiny of Harold Leddy, a revenue agent in the Audit Division of the Internal Revenue Service. Leddy requested to examine the taxpayers' 1967 income tax return and suggested June 18, 1969, as an interview date. Mr. Erickson cancelled this appointment on June 16, 1969, and rescheduled it for June 24, 1969.

On June 17 the taxpayers retained the defendant Thomas Murphy as their counsel; and later that day Murphy retained the defendant Donald Cote to assist him. Both Murphy and Cote practice their professions in St. Cloud. Cote had prepared the taxpayers' returns for the years 1960 through 1968, but this was his first contact with Murphy concerning the taxpayers. Murphy hired Cote because he was already familiar with the taxpayers'

history and because of his expertise in accounting. Under their arrangement, a room was set aside in Murphy's law offices where Cote worked on the case. He billed Murphy for his services.

A week later, on the date of the scheduled interview, Murphy informed Leddy that the 1967 tax records could not be examined until an accountant had checked them. On September 11, 1969, Leddy tried again and was informed by Murphy that he was still advising his clients to withhold these records.

On September 22, 1969, an associate of Murphy delivered amended income tax returns for the years 1966, 1967 and 1968, together with a check for $14,057, to Leddy on behalf of the taxpayers. These returns listed additional income of $4,000 for 1966, $19,200 for 1967, and $19,100 for 1968, but contained no explanation of the increases.

On October 24, Howard George, an agent in the Intelligence Division of the Service, was assigned to the case and the investigation was broadened to include the years 1965, 1966, and 1968. The Intelligence Division enters an investigation when a possibility of criminal fraud exists.

Having wind of George's involvement, Cote delivered his complete files pertaining to the taxpayers to Murphy on November 3, 1969. These records cover the years 1960 through 1968, and had been maintained by Cote at his office. Two days later Murphy informed George that his clients would not be available for questioning and would not furnish any records. On November 12 the agents asked Cote to produce the work papers which he had used in preparing the original returns for the four years now under investigation, but having already relinquished control over them, he could not comply.

On June 18, 1970, George issued a summons to Cote requiring him to testify and produce retained copies of the original 1965–1968 returns, memoranda and work papers used in preparing the original returns for the years 1965–1968, and work papers used in preparing the amended returns for the years 1966–1968. Cote appeared in response to this summons on June 29. He testified about preparing the original returns; he claimed that all his work papers were the property of his clients.

On August 27, 1970, George issued a summons to Murphy requesting essentially the same material listed in the earlier summonses. In response Murphy produced a copy of the taxpayers' original 1967 return. He declined to produce anything else.

This is the undisputed chronology of events preliminary to the filing of this action on November 23, 1970, by the United States and George. An affidavit supporting the petition was submitted by George. He stated that the testimony and records demanded by the summons are "necessary for the determination of the tax liabilities of John C. and Evelyn Erickson for the years 1965 through 1968, inclusive." In view of the fact that Cote no longer possesses any of the papers described in the summons addressed to him, plaintiffs request that enforcement of that summons be limited to his testimony concerning the memoranda, work papers and returns. And because the Service has both the original and amended returns for the years 1965–1968, the plaintiffs request that enforcement of the summons directed to Murphy be limited to his production of the work papers and memoranda pertaining to both types of returns.

The defendants have requested that the summonses be quashed in their entirety on grounds that will be discussed in the pages to come. Alternatively, they request that the summonses be quashed to the extent that they would force Cote and Murphy to disclose information protected either by the attorney-client confidential relationship or the taxpayers' constitutional privilege against self-incrimination.

The taxpayers sought leave to intervene in these proceedings under Rule 24 (a) of the Federal Rules of Civil Procedure. They asserted a proprietary inter-

est in the documents, raised a Fifth Amendment defense, and argued that the plaintiffs are improperly using this civil enforcement proceeding to obtain evidence for use in a criminal action against them. They sought discovery of various manuals of the Service and the periodic reports of the two agents. George has been served with a subpoena calling for these documents. He has moved to quash the subpoena.

These motions were the subject of a hearing on January 18, 1971. The taxpayers' motion to intervene was granted at that time. This occurred before this Court had the benefit of Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 53, 27 L.Ed.2d 580 (1971), in which the Supreme Court restricted the ability of taxpayers to intervene in summons proceedings. Intervention is no longer an issue in this case. We now turn to the merits of the case, discussing, first, the testimony and work papers relating to the original returns and, later, the testimony and work papers relating to the amended returns.

## WORK PAPERS RELATING TO ORIGINAL RETURNS

■ Defendants argue that the work papers and memoranda which Cote utilized in preparing the original returns are protected because they are the property of the taxpayers and to force their production would violate the taxpayers' Fifth Amendment right against self-incrimination. Cote's statement that he viewed his work papers as the property of the taxpayers does not settle the issue. The defendants agree that this Court is not bound by the assertions of the taxpayers, their accountants or their lawyers.

■ The facts of this case do not support the conclusion that the taxpayers had a proprietary interest in their accountant's handiwork. Before the initiation of the investigation they had not claimed title to the papers, nor had they ever asserted authority over them. This is not surprising because people generally do not lay claim to technical memo-randa and work papers which they will find inscrutible. Cote had prepared and accumulated his files pertaining to the taxpayers for nine years. He had uninterrupted possession of them until five months after the investigation began. Uninterrupted possession is a factor which has weighed heavily with courts in similar cases where ownership of accountants' work papers was an issue. Sale v. United States, 228 F.2d 682, 686 (8th Cir. 1956); Bouschor v. United States, 316 F.2d 451, 456 (8th Cir. 1963); United States v. Zakutansky, 278 F.Supp. 682, 685 (D.Ind.1968).

■■ Cote's hurried transfer of his files to the taxpayers' recently retained attorney did not result in a change of ownership. It did not vest rightful possession in either the taxpayers or their counsel. It was an attempt to straight-arm the Government investigators, which cannot be condoned by this Court. Bouschor v. United States, *supra*, at 459. We find that the work papers and memoranda which Cote used in preparing the taxpayers' original returns for the years 1965 to 1968 are his personal property.

## WORK PAPERS RELATING TO AMENDED RETURNS

To protect the memoranda and work papers which were used in preparing the three amended returns the defendants and taxpayers invoke the attorney-client relationship, the work product privilege, the taxpayers' Fifth Amendment guarantee against self-incrimination, and the claim that the summonses were issued for an improper purpose.

■ The defendants concede that no privileged accountant-client relationship exists with regard to the work papers and memoranda which Cote utilized in preparing the original returns. But they contend that Cote's relationship to the taxpayers changed "dramatically" on June 17, 1969, when he was entered on Murphy's payroll. Thereafter, they argue, Cote worked as Murphy's agent and his work papers pertaining to the amended returns are entitled to the same protection as that afforded any other

confidential communication between client and attorney.

In rebuttal the plaintiffs cite United States v. Merrell, 303 F.Supp. 490, 493 (D.N.Y.1969), and Colton v. United States, 306 F.2d 633, 638 (2nd Cir. 1962), for the general rule that income tax work papers are not confidential because, by definition, they contain information that will later appear on a return. The investigative functions of the I.R.S. would appear to be facilitated by the adoption of this rule. But it could also result in the wholesale destruction of work papers by accountants and attorneys, and it certainly would deter a client from being candid with his attorney. In view of these problems, it is not wise to subscribe to this broad rule in the case at hand, even though some of the information on Cote's work sheets undoubtedly appeared on the amended returns.

To this Court's thinking it becomes more profitable to inquire as to what advice was sought by the taxpayers and from whom, rather than attempt to discover the intended destination of information contained on the work sheets. This was the direction taken by the Second Circuit in United States v. Kovel, 296 F.2d 918 (2nd Cir. 1961), in which an accountant-employee of a law firm pleaded the attorney-client privilege in refusing to answer questions about the tax affairs of a client of the firm during a grand jury proceeding. Speaking for the Court, Judge Friendly proposed the following functional test to determine when an accountant who works for a lawyer may invoke the privilege:

"What is vital to the privilege is that communication be made in confidence for the purpose of obtaining *legal* advice *from the lawyer*. If what is sought is not legal advice but only accounting service, as in Olender v. United States, 210 F.2d 795, 805–806 (C.A. 9th, 1954), see Reisman v. Caplin, [375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459] (1961), or if the advice sought is the accountant's rather than the lawyer's, no privilege exists." 296

F.2d 918, 922. (Emphasis in original.)

Both plaintiffs and defendants cite *Kovel* with approval in their briefs. As additional authority defendants cite Bauer v. Orser, 258 F.Supp. 338 (D.N.D. 1966), which they claim is factually identical to the present case. This Court recognizes that *Bauer* is important because it contains a concrete application of the abstract test enunciated in *Kovel*. But a close reading of *Bauer* reveals that most of its elements are missing in the present case.

In *Bauer* the taxpayers first retained Vogel, an attorney, for advice about their Federal income tax returns. Vogel promptly retained Orser for accounting assistance. Neither Vogel nor Orser had been involved in the preparation of the original returns. The taxpayers had always had custody of their tax records. Under the close supervision of Vogel, they turned their files over to Orser, who also received instructions from Vogel regarding the nature of the services he was to perform. Amended returns were filed. Less than a month later, the taxpayers received the initial inquiry from the I.R.S. about their returns. The Court found that Orser was the employee of the Vogel firm, that Orser's work papers were the property of that firm, that these papers contained confidential information from the taxpayers who had been assured by counsel that the information would not be divulged, and that Orser had been employed to aid Vogel in giving proper legal advice to his clients. The Court held that Orser's work papers were included within the attorney-client privilege.

Unlike the taxpayers in *Bauer*, the Ericksons employed an accountant many years before they retained an attorney. They consulted Murphy after they knew they were under investigation. Murphy hired a man who was intimately familiar with the taxpayers' records. Nothing was adduced at the hearing to indicate that Murphy supervised Cote as Vogel did Orser.

In *Kovel* the importance of the control that a lawyer exercised over the accountant-client consultations was recognized:

" * * * if the lawyer has directed the client, either in the specific case or generally, to tell his story in the first instance to an accountant engaged by the lawyer, who is then to interpret it so that the lawyer may better give legal advice, communications by the client reasonably related to that purpose ought fall within the privilege." 296 F.2d 918, 922.

In *Bauer* the attorney was in complete command. This fact was a central feature in the Court's opinion. This fact is absent in the present case. How much direction could Murphy give to an accountant who had worked for the taxpayers for eight years? There was no evidence that Murphy asked Cote to translate technical accounting problems in order to advise his clients of the legal ramifications. Murphy testified that he advised the taxpayers to file amended returns, but it appears that this was the extent of his advice. It will be recalled that the work papers in question were created by Cote, not Murphy. This Court finds that these work papers were not prepared by Cote to assist Murphy in giving legal advice to his clients. They were prepared to enable Cote to make amendments to original returns that he had personally prepared years before. These papers are not protected by the attorney-client privilege.

▆▆▆ Defendants next invoke the work product privilege enunciated in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and incorporated in Rule 26(b) (3)[1] of the Federal Rules of Civil Procedure to protect the work papers used by Cote. It is noteworthy that they cite no case in which the work product privilege has been used successfully in a proceeding to enforce a § 7602 summons. Some courts have doubted whether the privilege is at all relevant to this type of proceeding. United States v. McKay, 372 F.2d 174, 176 (5 Cir. 1967), but we need not go to such lengths to dismiss the defendants' argument. In order to prevail the defendants must show that work papers and memoranda which Cote used in preparing the amended returns were prepared in anticipation of litigation or for trial, and the plaintiffs must show that they had a substantial need for these papers and were unable to obtain the information contained in the papers from another source. Defendants state that it is "common knowledge" that tax investigations often lead to litigation. We do not know whether this is a correct reading of the public's pulse, but we do know that it is not convincing proof that Cote prepared the work sheets with an eye toward trial. We find that the plaintiffs' burden was satisfied by Agent George's testimony at the hearing, his affidavit already quoted, and by the undisputed fact that the amended returns contained no explanation of the large increases in income. We conclude that the work product privilege affords no protection to the papers and memoranda used by Cote.

▆▆▆ The taxpayers' Fifth Amendment claim must turn, once again, on whether the work papers prepared by Cote and held by Murphy are their per-

---

1. Rule 26(b) (3). *Trial preparation: Materials*. Subject to the provisions of subdivision (b) (4) of this Rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b) (1) of this Rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the Court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

sonal property. As stated by the Supreme Court in United States v. White, 322 U.S. 694, at 699, 64 S.Ct. 1248 at 1251, 88 L.Ed. 1542:

" * * * the papers and effects which the privilege protects must be the private property of the person claiming the privilege, or at least in his possession in a purely personal capacity."

The taxpayers have the burden of establishing the privilege. Bouschor v. United States, *supra*, at 456. To sustain this burden, taxpayers cite a conversation Murphy had with the agents. When asked, "Whose property are the work papers for the amended returns?", Murphy replied, "Well, there, I have at least a special property in them. I have possession, and they are the work products of my office. I have an attorney's lien on them." Arguing that an attorney's lien is a possessory lien entitling the attorney to retain possession of property until his fees are paid, taxpayers claim that Murphy's last sentence is an admission that the property is owned by them. They fail to note his preceding sentence which may be interpreted to mean that Murphy was seeking refuge in the work product privilege for papers which he believed he owned. Because a double interpretation may be given to Murphy's reply, we do not find that it lends much support to the taxpayers' position.

Nor do we find United States v. Cohen, 388 F.2d 464 (9 Cir. 1967), of much assistance. This case is cited by the taxpayers, but it is clearly distinguishable from the present case. In *Cohen* the taxpayer physically retrieved records from his accountant after being approached by two tax investigators. He declined to produce them on grounds that the documents would be self-incriminating. The Court upheld this contention after finding that the taxpayer had "rightful" possession of the documents.

In the present case, of course, the Ericksons never had possession of Cote's work papers.

We conclude that the taxpayers have not sustained their burden of establishing a proprietary interest in the work papers. Their Fifth Amendment claim has no merit.

Defendants' final assertion is directed at protecting the work papers used in preparing both the original and amended returns. They argue that the summonses were not issued for the purpose of determining the taxpayers' correct liability; instead, they were issued to gather information that will be used against them in a future criminal action. It is in pursuit of this argument that they seek discovery of Service manuals and the agents' reports.

Both Leddy and George testified at the hearing that the documents which have been summoned are necessary to their investigation. They stated that when they receive the papers, they initially will determine whether there is any civil tax liability; later they will determine whether the evidence warrants criminal prosecution. This Court finds that the agents seek the work papers and memoranda primarily for the purpose of calculating the correct income tax liability of the taxpayers for the years 1965–1968. Criminal prosecution is not their objective at this point in time. Accordingly, the summonses were issued for a proper purpose. Donaldson v. United States, *supra;* United States v. Giordano, 419 F.2d 564, 568 (8 Cir. 1969), and cases cited therein. Because the evidence submitted at the hearing does not support the defendants' charges of improper purpose, discovery will not be ordered. United States v. Salter, 432 F.2d 697, 700–701 (1 Cir. 1970). The plaintiffs' motion to quash the subpoena duces tecum served on George must therefore be granted.

A separate Order will be entered.