UNITED STATES of America and Adolph Drutz, Special Agent, Internal Revenue Service, Petitioners,

v.

James McGirr KELLY.

Civ. A. No. 69–462.

United States District Court, E. D. Pennsylvania.

Sept. 12, 1969.

Louis C. Bechtle, U. S. Atty., Philadelphia, Pa., for plaintiff.

Joseph Carlin, Philadelphia, Pa., for defendant.

## OPINION

JOHN MORGAN DAVIS, District Judge.

This action was brought pursuant to Sections 7402(b) and 7604(b) of the Internal Revenue Code of 1954, 26 U.S.C. § 7402(b) and 7604(b) (1964) seeking judicial enforcement of summons served upon James McGirr Kelly, Esquire, the respondent in the present action.

The case was submitted to this Court on a stipulation of facts which briefly stated is as follows. Mr. Drutz, Special Agent for the Internal Revenue Service, was assigned to participate in a tax investigation of the Gotham Trucking Corporation, Brewery Real Estate Corporation, James Penza Enterprises, Inc., James Penza Trucking, Inc., DuKesa Sales Corporation, Eastern Brewers, Inc., and Eastern Brewing Corporation. (the above named corporations hereinafter called the "Corporate Taxpayers".) The investigation in question covered various years from 1960 to 1967. Apparently, the above mentioned companies are under the control of Mr. James Penza, the client of James McGirr Kelly, Esq.

During the course of Special Agent Drutz's investigation, he visited the accounting firm of Henry Roeser and Co. and examined the accountant's work papers dealing with the corporate taxpayers previously mentioned. Parenthetically, these work papers were the property of Henry Roeser and Co. and their services were paid for by the corporate taxpayers.

On January 20, 1969, after Agent Drutz had briefly examined the work papers, he asked Mr. McKenna of Henry Roeser and Co. if it would be possible to get copies of them. In addition, he indicated that he would return and prepare for a complete audit. Prior to Agent Drutz's return, the work papers in question were turned over to Mr. James Penza and later transferred to James McGirr Kelly, Esquire, as attorney for Mr. Penza and the corporate taxpayers.

The Internal Revenue Service properly served Mr. Kelly with seven summons requesting release of the work papers. Mr. Kelly refused to divest himself of these documents, raising his client's privilege of self incrimination and alleging an attorney-client privilege. Mr. Kelly's refusal formed the basis of the present civil contempt proceeding.

Respondent maintains, that the transfer of the work papers from the accountant to Mr. Penza, in his capacity as an individual, had the legal effect of transferring title and ownership to Mr. Penza. As property of Mr. Penza, respondent maintains that he may properly invoke his client's constitutional privilege of self incrimination. Furthermore, since his client transferred the work papers to him as an attorney he may properly invoke his attorney-client privilege.

The government has not stipulated to the fact that Mr. Penza received the work papers in his capacity as an individual. They allege that he received them in his capacity as a corporate official. This Court need not have a trial on the merits to decide this factual question because the ultimate legal conclusion would not differ.

Initially, when the work papers were in the possession of the accounting firm no privilege exists. It has been well established that no privilege exists between an accountant and his client which would preclude the production of accountant's work papers. Falsone v. United States, 205 F.2d 734 (C.A.5 1953); Sale v. United States, 228 F.2d 682 (C.A.8, 1956), cert. den. 350 U.S. 1006, 76 S.Ct. 650, 100 L.Ed. 868 (1956); In re Fahey, 300 F.2d 383 (C.A.6, 1961); Bouschor v. United States, 316 F.2d 451 (C.A.8, 1963), United States v. Boccuto,

175 F.Supp. 886 (D.N.J.1959), appeal dismissed 274 F.2d 860 (C.A.3, 1959).

■ Now, when the accounting firm divested itself of the summon material, if it did so by turning over the work papers to Mr. Penza in his capacity as a corporate official, no privilege exists because, the privilege against self incrimination is a purely personal privilege of the witness, United States v. White, 322 U.S. 694, 698, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944); Rogers v. United States, 340 U.S. 367, 371, 71 S.Ct. 438, 95 L.Ed. 344 (1951), it is not available to corporations, even though such entities are chargeable with criminal violations. Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906), Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911).

In addition, it naturally follows that if Mr. Penza received the work papers in his capacity as a corporate official he may not invoke a personal privilege. As was stated in the Wilson case *supra*, pp. 384–385, 31 S.Ct. p. 546 which dealt with the service of a subpoena duces tecum on the president of a corporation seeking the production of certain corporate records:

> The appellant [the president] held the corporate books subject to the corporate duty. If the corporation were guilty of misconduct, he could not withhold its books to save it; and if he were implicated in the violations of law, he could not withhold the books to protect himself from the effect of their disclosures.

■ Finally, if Mr. Penza received the work papers in a purely personal capacity no privilege would exist. To hold that the mere transfer of documents, not subject to a privilege, creates a privilege in the holder, is an absurdity. The logical extension of such a rule would result in a total strangulation of the investigatory process. Mr. Penza's possession of the work papers was merely temporary, at best, he was a mere conduit through which the work papers passed in their movement from the accountant to Mr. Kelly, as attorney for the taxpayers.

This movement occurred after the IRS has briefly examined the papers and it is quite obvious that both Mr. Penza and Mr. Kelly, were fully aware of the fact that an IRS investigation was in progress. Obviously the transfer of the documents was a sham transaction designed to create a privilege which did not otherwise exist.

■ Concerning the attorney-client privilege it may be generally stated that no privilege may be created by merely handing over otherwise unprivileged material to an attorney. Grant v. United States, 227 U.S. 74, 33 S.Ct. 190, 57 L.Ed. 423 (1913). In the *Falsone* case *supra*, the Court explaining the necessity for the rule, quotes: Am.Jur., Witnesses, Sec. 501:

> The administration of justice could easily be defeated if a party and his counsel could, by transferring from the one to the other important papers required as evidence in a cause, thereby prevent the Court from compelling the production of important papers on a trial.

Furthermore no privilege exists as to Mr. Kelly since he rendered no legal services in regard thereto but merely gained possession of the accountant's work papers. A similar situation existed in Bouschor v. United States, supra, in which the court, disallowing the appellant-attorney's claim of privilege stated, 316 F.2d at page 457:

> "If an unprivileged document exists before there exists an attorney-client relationship the mere delivery of the document to an attorney does not create a privilege * * *"

For the above reasons the production of the documents in question is hereby ordered. Since the documents are in the custody of the Clerk of the United States Court for the Eastern District of Pennsylvania, it is further ordered that said documents be released by the Clerk's Office and turned over to the appropriate government agency for their inspection, and use.