**UNITED STATES of America and Alan M. Feldman, Special Agent, Internal Revenue Service, Petitioners,**

**v.**

**Solomon FISHER, Respondent.**

**Misc. No. 72–18.**

United States District Court, E. D. Pennsylvania.

Aug. 4, 1972.

Richard Scully, Dept. of Justice, Tax Div., Washington, D. C., for I. R. S.

U. S. Atty. Louis C. Bechtle, E.D.Pa., Asst. U. S. Atty. James C. Sommar, for the United States.

Solomon Fisher and Richard L. Bazelon, Dilworth, Paxson, Kalish, Levy & Coleman, Philadelphia, Pa., for Fisher.

## MEMORANDUM AND ORDER

JOHN MORGAN DAVIS, District Judge.

The Internal Revenue Service (I.R.S.) issued a summons pursuant to 26 U.S.C. § 7602 in which they seek to make Solomon Fisher, Esquire, produce certain records which are presently in his possession. The summons was issued to him on December 1, 1971, and it sought certain documents prepared by Harold Berson, a certified public accountant, for Morris and Sally Goldsmith for the tax years 1969 and 1970.

An investigation was being conducted by Alan M. Feldman, Special Agent, Internal Revenue Service on the possible tax liability of the Goldsmiths. In the latter part of July, 1971, Mr. Feldman spoke to Mr. Goldsmith and explained to him that he would like to make an appointment to discuss his tax liabilities (N.T. 20). On August 3, 1971, Mr. Fisher contacted Agent Feldman and told him that he represented the Goldsmiths and that Mr. Goldsmith would not appear for the appointment which had been previously made. (N.T. 20 and 21). In the early part of August, 1971 Mr. Goldsmith requested that Mr. Berson give the tax records to him because of the tax investigation (N.T. 46 and 47). On August 17, 1971 the Goldsmiths turned over to Mr. Fisher, who is their personal attorney, the records which are the subject matter of the present summons (N.T. 3).

On October 22, 1971 Agent Feldman contacted Mr. Berson and served a summons on Mr. Berson seeking documents which related to the tax liability of the Goldsmiths with a return date of November 3, 1971. Mr. Berson testified that he had contacted Mr. Goldsmith and told him that he would like to have the documents back because of the summons which had been served on him. (N.T. 49). Previous to the investigation, Mr. Berson had kept various documents of the Goldsmith's file which dated as far back as 1959 (N.T. 50). On November 3, 1971, the return date of the summons, Mr. Berson could not get the records back (N.T. 49 and 50).

On December 1, 1971, the summons which the I.R.S. now seeks to enforce was served upon Mr. Fisher. Mr. Fisher reported to the I.R.S. on December 13, 1971; however, he had indicated previously that he would not turn over the records to the I.R.S., although he would bring them with him in compliance with the summons (N.T. 4).

The present action to enforce the summons served on Mr. Fisher was brought on February 8, 1972. A hearing on the Order to Show Cause was held on March 3, 1972. The Court allowed Morris and Sally Goldsmith to intervene as a party. Subsequently, the notes of testimony were transcribed and lengthy briefs were filed by both parties.

Initially, the first issue which is before the Court is: Was the summons issued for a valid purpose. Recently, the Supreme Court in Donaldson v. United States, 400 U.S. 517, at page 536, 91 S. Ct. 534, at page 545, 27 L.Ed.2d 580 (1971), after reviewing the complete administrative procedure and various

judicial decisions on the purpose of § 7602, stated:

> We hold that under § 7602 an internal revenue summons may be issued in aid of an investigation if it is issued in good faith and prior to a recommendation for criminal prosecution.

It is evident that no recommendation for criminal prosecution has been instituted by the I.R.S. There was no indication from Mr. Feldman's testimony, whether on direct or cross-examination, that a recommendation for criminal prosecution had been put forth.

█ Also, the fact that a Special Agent of the Intelligence Division of the I.R.S. was working on the case and not a Revenue Agent of the Audit Division does not suggest that a recommendation for criminal prosecution had been instituted or that this was not conducted in good faith by the I.R.S. The Supreme Court in *Donaldson, supra,* in discussing § 7602 stated that Congress clearly authorized the use of the summons in investigating what may prove to be criminal conduct. The Court went on to state on page 535, 91 S.Ct. at page 544 that, "There is no statutory suggestion for any meaningful line of distinction, for civil as compared with criminal purposes, at the point of a special agent's appearance."

██ The purpose of the summons is merely to examine the possible tax liability of the Goldsmiths. See Treas. Regs. § 301.7602–1(c)(4) and 26 CFR § 301.7602–1(c)(4). Agent Feldman's testimony clearly indicated the information which the I.R.S. wished to obtain was not information the Commissioner already had in his possession. The criteria for enforcement of the summons established in United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), has clearly been met.

The next determination which must be made is whether or not the enforcement of the summons would violate the Goldsmith's Fifth Amendment rights. It is the position of Mr. Fisher that the documents prepared by the accountant, Mr. Berson, for the taxpayers and turned over to the Goldsmiths who subsequently turned them over to Mr. Fisher as their counsel for the taxpayers, are within the privilege against self-incrimination and that counsel can decline to disclose them.

██ The question of ownership of the documents must be resolved initially. First, work papers of an accountant are his property unless the contrary is shown. United States v. Widelski, 452 F.2d 1 (6th Cir. 1971); United States v. Zakutansky, 401 F.2d 68, 70 (7th Cir. 1968), cert. denied, 393 U.S. 1021, 89 S.Ct. 628, 21 L.Ed.2d 565 (1969); In re Fahey, 300 F.2d 383 (6th Cir. 1961); United States v. Boccuto, 175 F.Supp. 886 (D.N.J.1959) app. dism. 274 F.2d 860 (3rd Cir. 1960). Secondly, if the papers had remained in the possession of the accountant, he would have been required to produce the papers. Falsone v. United States, 205 F.2d 734 (5th Cir. 1953); Sale v. United States, 228 F.2d 682 (8th Cir. 1956). Thirdly, if the taxpayer owned the papers, or if they were in his indefinite and rightful possession, they would have been protected under the Fifth Amendment right of his privilege against self-incrimination. United States v. Cohen, 388 F.2d 464 (9th Cir. 1967); Colton v. United States, 306 F.2d 633 (2d Cir. 1962) cert. denied 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963); Application of House, 144 F.Supp. 95 (N.D.Cal.1956). Some courts have held that the taxpayer's attorney in possession of accountant's work papers has no right to assert his client's privilege against self-incrimination. Bouschor v. United States, 316 F.2d 451 (8th Cir. 1963); In re Fahey, *supra;* United States v. Boccuto, *supra.* On the other hand, some courts have held the attorney can assert the right. United States v. Judson, 322 F.2d 460 (9th Cir. 1963); Colton v. United States, *supra;* Application of House, *supra.*

Mr. Berson, the accountant, testified that he wanted to determine the taxpayers profit and tax liability for 1969 and 1970. This was done by an analysis of

disbursements and receipts. Also, for Mrs. Goldsmith, the accountant would run trial balances to determine her profit. As far as Mr. Goldsmith was concerned, Mr. Berson would take a summary of his receipts and disbursements to obtain the income and expenses for Mr. Goldsmith (N.T. 57 and 58). Additionally a complete ledger was kept for Mrs. Goldsmith (N.T. 61).

■ In United States v. Peoples Deposit Bank and Trust Co., 112 F.Supp. 720 (E.D.Ky.1953), affirmed 212 F.2d 86 (6th Cir. 1954), cert. denied 348 U.S. 838, 75 S.Ct. 37, 99 L.Ed. 661 (1954), the District Court held, *inter alia,* that records and ledger sheets which related to taxpayer's banking business and which the I.R.S. sought to subpoena from the bank, were the property of the bank, and the taxpayer had no proprietary interest in them. In United States v. Pizzo, 260 F.Supp. 216 (S.D.N.Y.1966), where the accountant's work was confined to the preparation of the taxpayer's returns, the Court found, on the basis of the accountant's testimony, that:

. . . "work papers" means any papers "where you have records recorded on it and the common form of work papers are the columnar column" [type of paper]. Memorandum sheets could be work papers and "it might be almost anything from the taxpayer's books showing income or expenditures."

The papers prepared by Mr. Berson are those types which accountants consider work papers. Mr. Berson prepared a ledger and ran a trial balance for Mrs. Goldsmith; he ran a summary for Mr. Goldsmith. Notwithstanding Mr. Berson's testimony that he believed the records to be the taxpayer's property (N. T. 52), this Court is of the opinion that it is not bound by the assertions of the taxpayer, accountant or both. Deck v. United States, 119 U.S.App.D.C. 240, 339 F.2d 739 (1965), cert. denied 379 U.S. 967, 85 S.Ct. 660, 13 L.Ed.2d 560 (1965); *Bouschor, supra; Boccuto, supra; Sale, supra.*

At no time prior to the call from Agent Feldman did Mr. Goldsmith ask for the return of the work papers. It was only after the I.R.S. agent sought to set up an appointment with the taxpayer that the taxpayers requested the work papers returned to them. Mr. Berson testified that once he received the summons, he tried to get the work papers back from Mr. Goldsmith (N.T. 49).

■ These factors taken together with the case law show that the work papers were the property of the accountant.

The taxpayers, by way of their attorney, assert that, independent of the ownership concepts of the papers, they may raise the privilege against self-incrimination merely because of their rightful and indefinite possession of the papers, relying on United States v. Cohen, *supra.* However, the Third Circuit in United States v. Egenberg, 443 F.2d 512 (3rd Cir. 1971), held, *inter alia,* that where a third party has a superior right to possession of the papers, the witness cannot withhold them. The Court in *Egenberg* stated on page 518:

This conclusion is not at variance with the holding of United States v. Cohen, 388 F.2d 464 (9 Cir. 1967) on which the district court relied. There is language in *Cohen* suggesting that mere possession of third party papers is enough to bring those papers within the witness' privilege. That language is inconsistent with the holdings of the Supreme Court and the reasoning of the opinion is unpersuasive.

■ The facts in the instant case, as presented before this Court, demonstrate that the papers were and are the property of the accountant. They only left his possession after the taxpayer learned of the investigation. The transfer of the papers seems to indicate that this was an attempt to thwart the government's investigation. Of course, there is no attorney-client privilege which could be claimed since the accountant's transfer of nonprivileged papers to the client would not create a privilege when the

client turned the papers over to his attorney. See United States v. Kelly, 311 F.Supp. 1216 (E.D.Pa.1969).

For the above reasons, the production of the documents in question is hereby ordered.[1]

[1] This Opinion constitutes the prerequisite findings of fact and conclusions of law required by Rule 52(a) of Federal Rules of Civil Procedure. 28 U.S.C. Rule 52(a).