**UNITED STATES of America and Gerald T. Culver, Plaintiffs-Appellees,**

v.

**Robert I. WHITE, Defendant-Appellant.**

**No. 71–2381.**

United States Court of Appeals, Fifth Circuit.

April 17, 1973.

Rehearing En Banc Granted July 10, 1973.

---

758

George A. Hrdlicka, Houston, Tex., for defendant-appellant.

Anthony J. P. Farris, U. S. Atty., Houston, Tex., Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Atty., Carleton D. Powell, Dept. of Justice, Tax Div., Washington, D. C., for plaintiffs-appellees.

Before GEWIN, AINSWORTH and SIMPSON, Circuit Judges.

GEWIN, Circuit Judge:

In this case we must decide whether the constitutional privilege against compulsory self-incrimination may be invoked in behalf of a taxpayer by his attorney to prevent the production of income tax workpapers in his attorney's possession. Pursuant to 26 U.S.C. §§ 7402(b) and 7604(a),[1] the government petitioned the United States District Court for the Southern District of Texas for enforcement of an internal revenue summons issued on December 7, 1970 in connection with an investigation of the tax liability of Louis D. and Carolyn R. Roberts for the years 1966 through 1969 inclusive. The summons was addressed to Appellant White, taxpayers' attorney, and directed him to produce workpapers and other documents which had been prepared by taxpayers' accountant and which were then in White's possession. In the enforcement proceeding White asserted his clients' fifth amendment privilege as a bar to the compelled production of the documents in his possession. The district court, 326 F.Supp. 459, D.C., held that taxpayers had no fifth amendment rights with respect to the papers in their attorney's possession and ordered White to obey the summons. From this order White appeals.[2] We affirm.

From 1962 through 1968 taxpayers' income tax returns were prepared by Stanley H. Voelkel, a certified public accountant. Voelkel was not taxpayers' personal employee but rather was an independent contractor with his own office and numerous other clients. Using the information supplied to him by taxpayers, Voelkel would compile workpapers and other documents which summarized the data pertinent to the preparation of an income tax return; the information contained in the workpapers would then be used to complete each year's return. After filing a return Voelkel retained his workpapers in his files.

In 1967 taxpayers found it necessary to draft and submit to the Internal Revenue Service an offer in compromise of their tax liability for the years 1962 through 1965.[3] Voelkel assisted them in its preparation, compiling more workpapers in the process. Upon receipt of taxpayers' offer in compromise, the Internal Revenue Service assigned a reve-

---

1. § 7402. Jurisdiction of district courts.
   (b) to enforce summons.—If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, or other data, the district court of the United States for the district in which such person resides or may be found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data.
   § 7604. Enforcement of summons.
   (a) Jurisdiction of district court.—If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records, or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testi-

mony, or production of books, papers, records, or other data.

2. The district court also denied the taxpayers' request to intervene in the enforcement proceeding in order to protect their interests. Although this ruling may have been erroneous, *compare* Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1970) *with* Reisman v. Caplin, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964), we do not consider it because taxpayers have not appealed.

3. 26 U.S.C. § 7122 (1964 ed.) permits the Internal Revenue Service to accept a settlement in compromise of the tax liability of any taxpayer. Its purpose is to facilitate the settlement of tax liabilities without litigation.

nue officer to examine it and to make a recommendation as to its acceptability. The revenue officer apparently found indications that taxpayers did not adequately disclose their assets in making the settlement offer. His discoveries were eventually reported to the Intelligence Division of the Internal Revenue Service which in 1969 assigned a special agent to join him in a thorough investigation of the offer in compromise. Undoubtedly one purpose of this investigation was to determine whether taxpayers had committed criminal violations in making the settlement offer.

When they learned that a special investigation was underway, taxpayers turned to White for counsel; he was officially appointed their attorney and representative-in-fact on a government power of attorney form filed with the Internal Revenue Service. White immediately contacted Voelkel and by November of 1969 had obtained from him not only the workpapers he used in preparing the offer in compromise but also all workpapers used in preparing taxpayers' income tax returns for the years 1962 through 1968. It was agreed that White could keep Voelkel's papers indefinitely but that he would return them upon completion of his representation of taxpayers.

In 1970 taxpayers withdrew their offer in compromise. Shortly thereafter the Internal Revenue Service expanded the scope of its investigation into taxpayers' affairs to include a review of their tax returns for the years 1966 through 1969 in order to determine among other things their correct tax liability for those years. In connection with this expanded investigation the summons in question was issued and served on White.[4] Although the Internal Revenue Service initially sought all of the workpapers in White's possession, it subsequently modified its demands to encompass only those workpapers used by Voelkel in preparing taxpayers' income tax returns for the years 1966 through 1968. When White refused to produce these workpapers, the government petitioned the district court for enforcement of the summons. At the time enforcement was requested, there had been no recommendation to prosecute either with respect to the tax returns under investigation or with respect to the offer in compromise.

Resolution of this case begins with White's contention that the summons served upon him pursuant to 26 U.S.C. § 7602 is unenforceable because the Service's sole objective in issuing it was to obtain evidence for use in a criminal prosecution of his clients. In Donaldson v. United States[5] the Supreme Court refused to hold that a § 7602 internal revenue summons is invalid if issued in aid of a tax investigation which might result in a recommendation that a crimi-

---

4. The summons was issued pursuant to 26 U.S.C. § 7602 (1964 ed.), which provides:
   Examination of Books and Witnesses.
   For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized—
   (1) To examine any books, papers, records or other data which may be relevant or material to such inquiry;
   (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and
   (3) To take such testimony of the person concerned under oath, as may be relevant or material to such inquiry.

5. 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971).

nal prosecution be instituted against the taxpayer. The Court rejected a contention similar to White's with these observations:

"Congress clearly has authorized the use of the summons in investigating what may prove to be criminal conduct . . . . There is no statutory suggestion for any meaningful line of distinction, for civil as compared with criminal purposes, at the point of a special agent's appearance. . . . To draw a line where a special agent appears would require the Service, in a situation of suspected but undetermined fraud, to forego either the use of the summons or the potentiality of an ultimate recommendation for prosecution. We refuse to draw that line and thus to stultify enforcement of federal law. . . .

We hold that under § 7602 an internal revenue summons may be issued in aid of an investigation if it is issued in good faith and prior to a recommendation for criminal prosecution." [6]

■ In view of *Donaldson* it can hardly be disputed that § 7602 permits an internal revenue summons to be issued and enforced in aid of a tax investigation in which civil and criminal purposes are intertwined; the Court cautioned only that the summons must be issued in good faith and prior to a recommendation for criminal prosecution. The record in this case plainly reveals that the summons addressed to White was issued in connection with an investigation the purpose of which, at least in part, was to ascertain the correct income tax liability of taxpayers for the years 1966 through 1969. The trial court conducted an in camera examination of the Service's motives which substantiated the evidence presented in open court.

Although the investigation definitely carried with it the possibility of criminal consequences, no recommendation for criminal prosecution had been made either at the time the summons was issued or at the time enforcement was sought. In these circumstances the issuance of the summons was authorized by § 7602.

More substantial problems are raised by appellant's contention that his clients' constitutional privilege against compulsory self-incrimination would be violated if he were compelled to produce the workpapers in his possession. Since taxpayers were denied permission to intervene in the enforcement proceeding, they were unable personally to assert their fifth amendment privilege. Instead White as their attorney asserted it in their behalf. A threshold question, then, is whether attorneys have standing in internal revenue proceedings to assert the privilege in behalf of their clients. This question has been considered by several lower federal courts, and, as is so often the case, conflicting decisions have resulted.

On one hand there is the traditional view that the fifth amendment privilege is purely personal; it does not permit a witness to plead the fact that another party might be incriminated by his testimony even though he is that party's agent or attorney.[7] On the other hand some courts have taken the position that too heavy a burden in terms of time and money would be imposed on taxpayers if they were required to be present personally at internal revenue hearings and enforcement proceedings in order to exercise their constitutional rights.[8] Under this view an attorney does have standing to invoke the privilege in his client's behalf in response to an internal revenue summons that seeks the production of incriminat-

6. *Id.* at 535–536, 91 S.Ct. at 544.

7. Bouschor v. United States, 316 F.2d 451, 458 (8th Cir. 1963). *Accord* In Re Fahey, 300 F.2d 383, 385 (6th Cir. 1961). Both of these cases rely on language in Hale v. Henkel, 201 U.S. 43, 69–70, 26 S.Ct. 370, 50 L.Ed. 652 (1906).

8. Application of House, 144 F.Supp. 95, 100 (N.D.Cal.1956). *Accord* United States v. Judson, 322 F.2d 460 (9th Cir. 1963).

ing documents. Assuming, without deciding, that the latter view is correct and therefore that White has standing to assert his clients' privilege, a second question necessarily arises—whether the fifth amendment shields his clients from the compelled production of workpapers owned and prepared by their accountant and held in their attorney's possession. In order for White to be successful on appeal, this question must be answered in the affirmative; for even though he may have standing, it is of no use to him if his clients have no fifth amendment rights with respect to the papers in his possession.[9]

■ Like the question of standing, this question has also elicited contradictory responses from the lower federal courts.[10] Fortunately the Supreme Court has provided some guidance with its recent opinion in Couch v. United States.[11] The issue presented in *Couch* was whether a taxpayer could successfully invoke her privilege against self-incrimination to prevent the production of incriminating documents in her *accountant's* possession. The documents sought by the government were the taxpayer's business records which over the years had been given to her accountant for the purpose of preparing her income tax returns. The taxpayer retained title to the records in herself. As an intervenor in the enforcement proceeding brought against her accountant, she asserted her privilege against self-incrimination as a bar to production of the records.[12]

■ In rejecting the taxpayer's contention that ownership rather than possession defines the boundaries of the protection afforded by the fifth amendment, the Court once again emphasized the intimate and personal nature of the privilege. The privilege does not prevent the government from discovering incriminating evidence but rather precludes it from extorting such evidence from the accused himself. Without the essential ingredient of personal compulsion against the accused, a fifth amendment claim necessarily founders. When the government seeks papers which might implicate a taxpayer, the Court concluded that the ingredient of personal compulsion, essential to a claim of privilege, is almost invariably missing unless the papers are actually in the taxpayer's possession. The following remarks are particularly revealing:

> "We do indeed believe that actual possession of documents bears the most significant relationship to Fifth Amendment protections against governmental compulsions upon the indi-

9. As an alternative reason for not obeying the summons, White might have argued that the documents were protected by the attorney-client privilege. This argument has been uniformly rejected by the courts on the ground that pre-existing documents such as an accountant's workpapers cannot constitute a confidential communication between the attorney and his client. *See, e. g.*, United States v. Judson, 322 F.2d 460 (9th Cir. 1963). *But see* The Attorney and His Client's Privileges, 74 Yale L.J. 539 (1965).

10. *Compare* Application of House, 144 F. Supp. 95 (N.D.Cal.1956) *with* Bouschor v. United States, 316 F.2d 451 (8th Cir. 1963). *See also* United States v. Judson, 322 F.2d 460 (9th Cir. 1963); In re Fahey, 300 F.2d 383 (6th Cir. 1961); and United States v. Boccuto, 175 F.Supp. 886 (D.N.J.) appeal dismissed, 274 F.2d 860 (3d Cir. 1959).

11. 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973). The instant case was argued some time ago, but our decision has been delayed awaiting the decision of the Supreme Court in *Couch*.

12. By the time the government sought enforcement of the summons issued to Couch's accountant, the documents in question had been delivered to Couch's attorney. Nevertheless the Court treated the case as if the documents had remained in the accountant's possession because otherwise the command of a summons could be evaded simply by transferring possession before enforcement is sought. Thus the rights and obligations of the parties involved become fixed when the summons is served, and a transfer cannot alter them.

vidual accused of crime. Yet situations may well arise where constructive possession is so clear or the relinquishment of possession is so temporary and insignificant as to leave the personal compulsions upon the accused substantially intact. But this is not the case before us." [13]

Since it was the taxpayer's accountant rather than taxpayer herself who was actually in possession of the documents sought by the government, she could not legitimately claim that enforcement of the summons would compel her to incriminate herself.[14]

▮▮▮ The lesson to be drawn from *Couch*, then, is that unless the taxpayer is actually in possession of documents sought by the government—or clearly has constructive possession—he will be unable to seek the shelter of the fifth amendment because he will not be the object of any impermissible governmental compulsion. White's clients, allegedly the object of impermissible governmental compulsion, do not own the workpapers sought by the government, nor have they ever been in possession of these documents. It is White their attorney who is forced to respond to the governmental summons. The essence of White's complaint is that potentially incriminating information will be divulged to the government, not that it is being acquired by subjecting the taxpayers to the cruel dilemma of self-accusation, perjury, or contempt. The fifth amendment, however, protects not against the production of such information but only against its extraction from the accused himself.

Appellant's best argument is that taxpayers are in constructive possession of the workpapers because White, the actual possessor, obtained them only in his capacity as taxpayers' attorney and retained them only for the sake of convenience in representing them. In *Couch*, the Court acknowledged the possibility that in a case of constructive possession there might be sufficient governmental compulsion exerted upon the taxpayer to legitimatize a claim of privilege. As possible examples of such a case the Court cited Schwimmer v. United States [15] and United States v. Guterma.[16] In both of these cases a claim of privilege was successfully asserted to prevent the government from obtaining documents the parties had temporarily stored on the premises of corporations. The reference to these cases in *Couch* indicates that a claim of privilege might be valid on the constructive possession theory if the taxpayer has placed papers in the hands of another person or entity for custodial safekeeping, thereby, retaining the right to immediate possession though not having actual possession.[17]

▮▮▮ But this conception of constructive possession cannot be extended to fit the situation in which White's clients find themselves. For it is undisputed that they have never for an instant been in possession of the papers sought by the government. White himself obtained these documents from their accountant. Although not of controlling importance, there is no evidence in the record that he did so upon their instructions or that they even knew that he had

---

13. 409 U.S. 322, 333, 93 S.Ct. 611, 618, 34 L.Ed.2d 548, 557 (1973).

14. The Court also held that the Fourth Amendment did not afford the taxpayer any protection against the production of the documents sought by the government.

15. 232 F.2d 855 (8th Cir. 1956).

16. 272 F.2d 344 (2d Cir. 1959).

17. In many respects the taxpayer in *Couch* was in a better position to claim constructive possession than is the taxpayer here. In *Couch* the taxpayer herself raised the fifth amendment claim. Furthermore she actually owned the documents sought by the government and had them in her possession at one time. She had relinquished possession of them to her accountant so that he could assist her in preparing her returns. Nevertheless, the possibility that she was in constructive possession by the documents in question was given scant attention by the Court.

secured them. At the time the workpapers were demanded by the government, they had been in his possession for over a year. In these circumstances the necessary ingredient of personal compulsion against White's clients is totally lacking, and in its absence the fifth amendment does not prohibit the government from obtaining information vital to the enforcement of its laws and the collection of its revenues. The district court correctly ordered enforcement of the summons directed to White insofar as it required him to produce all of the accountant's papers in his possession that pertain to his clients' income tax returns for the years 1966 through 1969.[18] Its judgment is affirmed.

Affirmed.

AINSWORTH, Circuit Judge (dissenting):

With deference I dissent because of a strongly held belief that taxpayers' constitutional rights against self-incrimination are being violated by the action taken by the majority in affirming the district court in this case.

On December 7, 1970, Special Agent Gerald T. Culver of the Intelligence Division served an Internal Revenue Service summons on Robert I. White, attorney at law, who represented taxpayers, Mr. and Mrs. Roberts, under a written power of attorney filed with the Service, demanding production of certain work papers pertaining to taxpayers' federal income tax returns. These work papers were prepared by taxpayers' accountant and delivered to Mr. White at his request on behalf of his clients.[1] They remained in his possession for approximately a year when the summons was served.[2]

Attorney White declined to produce the papers demanded by the summons and the present enforcement proceeding was begun on February 22, 1971 by the United States and Special Agent Culver for enforcement of the summons, pursuant to 26 U.S.C. §§ 7402(b) and 7604(a).

A hearing was held before the district court on March 15, 1971, at which time Special Agent Culver testified that he had not reached any conclusions relative to criminal prosecution of taxpayers for violation of federal revenue statutes because he had not completed his investigation. The district court resumed the hearing again on April 5, 1971, and Special Agent Culver further testified: "In

---

18. There has been some confusion as to what papers the government is seeking, confusion that is no doubt exacerbated by the reference in the district court's order to offer in compromise files. For the sake of clarity we refer to the government's brief at page 12:

> We do not know that the workpapers were created to prepare the tax returns, and I think the summons is clear in that we want the workpapers that pertain to the correctness of the tax returns. We do not seek any information with regard to the offer in compromise.

1. The accountant, Stanley H. Voelkel, testified as follows:

Q. Mr. Voelkel, when Mr. White acquired possession of the documents did you know on whose behalf he was acting?
A. Yes, sir.
Q. Was it your understanding Mr. White was acquiring those records for himself or on behalf of Mr. Roberts?
A. On behalf of Mr. Roberts.

Q. Were you aware of the fact that Mr. White at that time was the attorney representing Mr. Roberts?
A. I did assume that he was, and it was implied that he represented Mr. Roberts. Otherwise, I wouldn't have given him the files.
Q. So you turned the files over to Mr. White as Mr. Roberts' attorney?
A. Yes.
Q. Was there any specific time limitation on Mr. White's right as Mr. Robert's attorney to keep possession of those records?
A. Well, he was to return them to me when he finished with them in connection with his representation of Mr. Roberts.
Q. So that the period of his possession as far as you were concerned was indefinite, is that correct?
A. Yes.

2. See generally Lyon, Government Power and Citizen Rights in a Tax Investigation, 25 Tax Lawyer 79 (1971).

my opinion, based on what I know at this point, I think there is a criminal violation involving the offer and compromise and the financial statement that accompanied that offer which was filed by [taxpayer] Mr. Roberts." Mr. Culver then listed several federal criminal statutes apparently violated by taxpayers, namely, 18 U.S.C. § 1001, 26 U.S.C. §§ 7206(1) and 7206(5).

While this appeal has been pending, taxpayers' counsel has furnished the court with information to the effect that the Chief of the Intelligence Division of the office of the District Director of the Internal Revenue had written taxpayer, Mr. Roberts, that a recommendation has been made to Regional Counsel to criminally prosecute him for attempted income tax evasion, for making and subscribing false and fraudulent income tax returns, for wilfully attempting to evade payment of income tax, for concealing property with intent to evade or defeat the collection of taxes, for filing a false financial statement, and for making false statements in an offer in compromise. The Government's response is that this information is irrelevant because at the time the summons was issued no recommendation for prosecution had been made.

There is strong reason to believe that the Government was not acting in good faith when it served the instant summons. The case had initially been investigated for some time by an Internal Revenue agent and the Special Agent of the Intelligence Division was called in later. Even though a recommendation for prosecution had not been made at the time the summons issued, the Service had sufficient information available upon which to base a recommendation. The recommendation should not have been delayed to take advantage of a civil summons. I doubt, therefore, that the requisites of Donaldson v. United States,

400 U.S. 517, 536, 91 S.Ct. 534, 545, 27 L.Ed.2d 580 (1971), have been complied with since the evidence points most strongly to an absence of good faith on the part of the Government, as required by *Donaldson*, in issuing the summons.

Nevertheless, I do not rest my dissent on this ground, but on the more important ground that taxpayers' constitutional rights under the Fifth Amendment against compulsory self-incrimination have been violated. The work papers involved here are documents that would be privileged under the Fifth Amendment if actually possessed by taxpayers when the summons was issued. *See* United States v. Cohen, 9 Cir., 1967, 388 F.2d 464.[3] In *Cohen* a summons was issued to obtain work papers prepared by taxpayer's accountant and then in taxpayer's possession. The Ninth Circuit maintained taxpayer's Fifth Amendment privilege against self-incrimination and declined to require taxpayer to produce the papers in response to the summons.

In the present case the work papers prepared by taxpayers' accountant from their books and records were not in taxpayers' possession but in that of a third person, the attorney at law charged with responsibility of representing them in their federal income tax matters. Attorney White was thus in constructive possession of these work papers on behalf of his clients. During the enforcement proceeding, he claimed the constitutional privilege on behalf of his clients. Then taxpayer, Mr. Roberts, filed a motion for leave to intervene "to claim the benefit of certain constitutional provisions which inured to his benefit," which was denied by the district judge. It is clear, therefore, that Mr. Roberts attempted also to assert his constitutional privilege. However, though the privilege is a personal one, there is no reason why it cannot be asserted in clients' behalf by their attorney at law.

---

3. *But see* United States v. Widelski, 6 Cir., 1971, 452 F.2d 1, 5 (declining to follow *Cohen*), cert. denied, 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972). This case was decided before the Supreme Court cited *Cohen* favorably in Couch v. United States, 409 U.S. 322, 330 n. 12, 93 S.Ct. 611, 617 n. 12, 34 L.Ed.2d 548 (1973).

*See* United States v. Judson, 9 Cir., 1963, 322 F.2d 460; In re House, N.D. Cal.1956, 144 F.Supp. 95.[4] In *Judson*, an Internal Revenue summons was served on an attorney in possession of clients' papers, demanding production of the documents. The Ninth Circuit maintained the Fifth Amendment privilege asserted by taxpayers' attorney in their behalf. There is no difference in principle between Judson and the present case.

The majority attempts to make a distinction in principle based upon the fact that the work papers in the present case are not owned by taxpayers but belong to taxpayers' accountant who prepared them from taxpayers' books and records. However, actual ownership of the documents is not necessary to the assertion of the privilege. *See* Couch v. United States, 409 U.S. 322, 330 n. 12, 93 S.Ct. 611, 617 n. 12, 34 L.Ed.2d 548 (1973). The critical question is the right of a possessor rather than that of an owner. In the present case, though the papers are not in the possession of taxpayers, they are in the possession of taxpayers' attorney, and constructively for their benefit.

The majority relies most heavily on the recent Supreme Court decision in Couch v. United States, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973), where an Internal Revenue Service summons directed to an accountant was challenged by taxpayer based on the Fifth Amendment privilege against self-incrimination. The Court held that the constitutional privilege was not available for documents in possession of the accountant. The case is clearly distinguishable because the accountant-client relationship is essentially different from the attorney-client relationship. There is no expectation of privacy in the accountant-client relationship. On the other hand, the attorney-client relationship is a personal one, guaranteed by the Sixth Amendment right to counsel, the attorney-client privilege,[5] and ethical restraints on the attorney.[6] The attorney-client relationship does not depend on whether the attorney or the client possesses the documents. As Professor Wigmore concluded: "It follows, then, that *when the client himself would be privileged* from production of the document, either as a party at common law or as a third person claiming title or as exempt from self-incrimination, the attorney having possession of the document is not bound to produce."[7] Moreover, the Ninth Circuit recognized: "The attorney and his client are so identical with respect to the function of the evidence and to the proceedings which call for his production that any distinction

4. There are cases to the contrary. *See, e. g.,* Bouschor v. United States, 8 Cir., 1963, 316 F.2d 451, 458; In re Fahey, 6 Cir., 1961, 300 F.2d 383. But they rely on dicta from Supreme Court cases where a mere agency relationship existed for the benefit of a public entity which had no Fifth Amendment privilege, such as in Rogers v. United States, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951); United States v. White, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944); McAlister v. Henkel, 201 U.S. 90, 26 S.Ct. 385, 50 L.Ed. 671 (1966); and Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L. Ed. 652 (1906).

5. *See* Rule 503, Rules of Evidence for United States Court and Magistrants, 41 L.W. 4021 (U.S.Sup.Ct. Nov. 21, 1972).

6. The new ABA Code of Professional Responsibility in its Ethical Consideration 4–4 notes: "The attorney-client privilege is more limited than the ethical obligation of a lawyer to guard the confidences and secrets of his client. This ethical precept, unlike the evidentiary privilege, exists without regard to the nature or source of information or the fact that others share the knowledge."

7. This rule is stated without regard for the path traveled by the documents. No policy would be served by requiring the client first to touch the documents before turning them over to his lawyer. The important fact in this case is that Voelkel gave the documents to White after assurances that he took possession for Roberts. *See also* Comment, The Attorney and His Client's Privileges, 74 Yale L.J. 539, 548 (1965) (for an alternative rationale).

is mere sophistry." United States v. Judson, 9 Cir., 1963, 322 F.2d 460, 467.[8]

In my view we are seriously weakening the attorney-client relationship and the Fifth Amendment privilege against self-incrimination by what the majority opinion decides in this case. I would accordingly deny the Government the right to production of documents in possession of taxpayers' attorney.

I, therefore, respectfully dissent.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before JOHN R. BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, INGRAHAM and RONEY, Circuit Judges.

By the Court:

A member of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc.

It is ordered that the cause shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.

---

8. Justice Marshall in his dissent to *Couch* suggested that the attorney's possession is an example of protected third party custody:

  A transfer to a lawyer is protected, not simply because there is a recognized attorney-client privilege, but also because the ordinary expectation is that the lawyer will not further publicize what he has been given.

409 U.S. at 350, 93 S.Ct. at 627, 34 L.Ed. 2d 548.