**UNITED STATES of America and Gerald T. Culver, Plaintiffs-Appellees,**

v.

**Robert I. WHITE, Defendant–Appellant.**

**No. 71–2381.**

United States Court of Appeals, Fifth Circuit.

Nov. 28, 1973.

George A. Hrdlicka, Houston, Tex., for defendant-appellant.

Anthony J. P. Farris, U. S. Atty., Houston, Tex., Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Atty., Carleton D. Powell, Crombie J. D. Garrett, John P. Burke, Tax Div. Dept. of Justice, Washington, D.C., for plaintiffs-appellees.

ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

(5 Cir., 1973, 477 F.2d 757).

Before BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, RONEY and GEE, Circuit Judges.

PER CURIAM:

Upon consideration of the record, briefs and oral argument in this cause en banc, the court concludes that the opinion and judgment of the majority of the panel should be and the same are hereby affirmed.[1]

AINSWORTH, Circuit Judge (dissenting):

There are very important constitutional principles involved in this federal income tax case, which concern the private and confidential relationship of attorney, accountant and client, and pertain especially to the privilege of taxpayers against potential self-incrimination in IRS tax investigations. The action of the majority of the en banc court in affirming the panel opinion requires that I reaffirm my original dissenting views (*see* 5 Cir., 477 F.2d 757, 764–767) and expand them further.

The majority has applied erroneous legal standards in enforcing an IRS sum-

1. Footnote 18 of the majority panel opinion, 477 F.2d 757 at 764, is rewritten as follows in order to clarify the same and correct typographical errors:

There has been some confusion as to what papers the government is seeking, which confusion is no doubt exacerbated by the reference in the district court's order to files relating to the offer in compromise. For the sake of clarity we refer to the government's brief at page 12 quoting from the record:

We do know that the workpapers were created to prepare the tax returns, and I think the summons is clear in that we want the workpapers that pertain to the correctness of the tax returns. We do not seek any information with regard to the offer in compromise.

mons and denying taxpayers' constitutional claim to the Fifth Amendment privilege against self-incrimination, concerning their accountant's workpapers constructively possessed in the hands of taxpayers' attorney. The factual context is briefly stated as follows. From information supplied by taxpayers, the accountant prepared certain workpapers pertaining to their income tax liability for the years 1966–68 and to an offer in compromise of income tax liability. When an investigation of taxpayers was begun by Internal Revenue Agents, including a Special Agent of the Intelligence Division, taxpayers' attorney White secured the workpapers from the accountant on behalf of his clients with the understanding that his possession was "indefinite." Shortly more than a year later the Special Agent served an IRS summons (pursuant to 26 U.S.C. § 7602) on attorney White demanding production of the workpapers. White declined to deliver the papers and production was ordered by the district court whose action is now reaffirmed by the majority of the en banc court.

Apparently the principal basis upon which the majority ruled adversely to taxpayers' constitutional claims was that "White's clients, allegedly the object of impermissible governmental compulsion, do not own the workpapers sought by the government, nor have they ever been in possession of these documents." 477 F.2d 757, at 763. The majority opinion stressed that the workpapers had been transferred directly from taxpayers' accountant to their attorney without the physical intervention of taxpayers. It pointed out that taxpayers "have never for an instant been in possession of the papers sought by the government." *Id.,* 477 F.2d 757.

The Government has contended both in its briefs to the panel and to the en banc court that taxpayers may not raise a Fifth Amendment claim against self-incrimination concerning potentially incriminating documents, possessed by them but which *they do not own.* The workpapers here are owned by taxpay-

ers' accountant but were transferred on indefinite leave to their attorney. In agreeing with the Government's contention relative to the necessity of ownership of the papers, the majority has erroneously declined to follow the teaching of the recent Supreme Court decision in *Couch v. United States,* 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973), which emphasized that *possession, not ownership,* of potentially incriminating papers is controlling when a taxpayer invokes the Fifth Amendment privilege. In *Couch* the privilege was asserted by a taxpayer as to tax records in the possession of her accountant where they had been for a number of years. The Court granted enforcement of an IRS summons because petitioner Couch, though the owner of the records, was not in actual possession at the time of service of the summons. The Court stated that the Fifth Amendment privilege is a *personal* privilege and that "[i]t is extortion of information from the accused himself that offends our sense of justice." 409 U.S. at 328, 93 S.Ct. at 616. The Court further said:

"Petitioner would, in effect, have us read *Boyd* [116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746] to mark *ownership, not possession, as the bounds of the privilege, despite the fact that possession bears the closest relationship to the personal compulsion forbidden by the Fifth Amendment. To tie the privilege against self-incrimination to a concept of ownership would be to draw a meaningless line.* It would hold here that the business records which petitioner actually owned would be protected in the hands of her accountant, while business information communicated to her accountant by letter, conversations in which the accountant took notes, in addition to the accountant's own workpapers and photocopies of petitioner's records, would not be subject to a claim of privilege since title rested in the accountant. Such a holding would thus place unnecessary emphasis on the form of communication to an account-

ant and the accountant's own working methods, while diverting the inquiry from the basic purposes of the Fifth Amendment's protections.

*"Other precedents debated by the parties lend no support to petitioner's contention that ownership of documents should determine the availability of the privilege."* (Emphasis supplied.) 409 U.S. at 331, 93 S.Ct. at 617.

The Supreme Court in *Couch* also cited with approval the holding of the Ninth Circuit in *Cohen*, as follows:

"See also United States v. Cohen, 388 F.2d 464, 468 (CA 9 1967), where the court, *in upholding the right of a possessor, nonowner to assert the privilege,* noted that 'it is *possession* of papers sought by the government, *not ownership,* which sets the stage for exercise of the governmental compulsion which it is the purpose of the privilege to prohibit.' Though the instant case concerns the scope of the privilege for an owner, nonpossessor, the Ninth Circuit's linkage of possession to the purposes served by the privilege was appropriate.

"We do not, of course, decide what qualifies as rightful possession enabling the possessor to assert the privilege." (Emphasis supplied.) 409 U. S. at 330 n. 12, 93 S.Ct. at 617 n. 12.

In United States v. Cohen, 9. Cir., 1967, 388 F.2d 464, the Government sought production of an accountant's workpapers which had been delivered to his client, Cohen, prior to the service of an IRS summons on the taxpayer. When the Revenue Agent demanded that the accountant ask his client for return of his papers the accountant complied but Cohen declined to return them. The Government contended that Cohen held the papers subject to a duty to surrender them to the accountant and, therefore, that he could not claim the privilege against self-incrimination. The district and appellate court both disagreed with this contention and declined to order Cohen to produce the accountant's workpapers in his possession.

In its opinion the Ninth Circuit (Browning, J.) said:

"As the government recognizes, the rule it suggests would make ownership of subpoenaed documents virtually essential to a claim of privilege, for ordinarily only the owner will be able to assert a right to possession superior to all others. But it is possession of papers sought by the government, not ownership, which sets the stage for exercise of the governmental compulsion which it is the purpose of the privilege to prohibit. The 'cruel trilemma' of perjury, contempt, or self-incrimination, of which the Court spoke in Murphy v. Waterfront Comm'n, [378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678] faces the individual whenever the government seeks to compel him to produce papers in his possession, for he must then either falsify, accept punishment for contempt, or yield. Lack of title does not free him from this choice. Possession of potentially incriminating documents is thus the necessary and sufficient condition of the privilege, for the compelled production, identification, and authentication of incriminating materials by the possessor will incriminate him, whether or not the documents are his.

"It is difficult to see how this conclusion could be affected by the fact that the papers were owned by another who had the right to demand their return. The owner's demand would not involve compulsion by the state, and compliance with it would not incriminate the possessor. The considerations upon which the right depends therefore would not apply, even though the documents might thereafter be obtained by the government from the owner. '[T]he sentiments which bar the *state* from requiring a person to deliver to it a self-incriminating document are logically unrelated to the fact that someone *else,* using methods and for reasons not giving rise to those same sentiments, can require the person to deliver up the doc-

ument to that someone else.' 8 Wigmore, Evidence § 2259b, at 360 (McNaughton rev. 1961)." (Footnote with numerous citations omitted.) *Id.* 388 F.2d at 468.

The court held that Cohen had rightful possession of the papers since he acquired them with his accountant's full consent. In rejecting the Government's contention that Cohen had no privilege as to nonowned accountant's workpapers, the court said:

"The government's second contention is that Cohen should be denied the privilege *against self-incrimination* as to the accountant's work papers because these documents were prepared by the accountant for the latter's own use and therefore 'did not constitute the personal private papers of the privilege-claimant' to which alone the privilege should apply. The 'normal character and nature of an accountant's work papers as third-party documents, vis-a-vis the client' was not changed, the government's contention continues, by the 'eleventh hour' transfer of these documents to Cohen.

"If documents are incriminating, compelled production by the possessor would seem prohibited by the *Fifth* Amendment for reasons already discussed, without regard to any other characteristic the documents may possess." *Id.* 388 F.2d at 470.

The court in *Cohen* further expanded its views on the question of the claim to the privilege as to these documents. It said:

"The government argues that the purpose of the privilege is to prevent the prosecutor from invading the claimant's 'privacies of life' (Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886) ), and to force the government 'to search for independent evidence' of the claimant's guilt (United States v. White, supra, 322 U.S. 694 at 698, 64 S.Ct. 1248 [88 L.Ed. 1542]). Papers which originated with the accountant and were created by him for his own pur-

poses are not embraced (the argument continues) within the 'privacies' of Cohen's life, but on the contrary, constitute an independent source of evidence of Cohen's offense. The government urges that Cohen should not be permitted to extend the area covered by the privilege or to deny the government access to independent evidence by gathering the documents into his possession after being advised of the government's interest.

"Although the summons issued in this case was sufficiently broad to include books and records which Cohen had delivered to the accountant for his use in the preparation of Cohen's tax returns, the government concedes that the privilege was not lost as to these books and records simply because Cohen reclaimed them so shortly before the summons was served. Thus the government's argument rests ultimately upon the contention that the documents were not sufficiently personal or private in character, rather than upon the contention that the time and manner of Cohen's acquisition of them undermined his claim of privilege.

"Statements in United States v. White, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944), that the privilege applies to 'personal' or 'private' records do not support the government's position. As this court pointed out in United States v. Judson, 322 F.2d 460, 464 ([9 Cir.] 1963), the Supreme Court intended only to distinguish between records of a natural person which are entitled to Fifth Amendment protection in appropriate circumstances and records of an impersonal organization which are never entitled to such protection. Since the latter are open to inspection by the government at its pleasure, so far as the privilege against self-incrimination is concerned, they may properly be characterized as quasi-public in character. There is nothing in *White* or earlier cases to suggest that the Court intended to base Fifth Amendment consequences upon the degree of

privacy which attended the creation or maintenance of particular records or upon the degree of the intimacy of the information which they contain.

"But even if we were to accept the government's test, the claim of privilege would not be barred here. Though prepared by Berke for use by him in the performance of his work, the work papers were scarcely public documents. They embody countless items of information relating to Cohen's purely personal affairs, including itemizations and summaries of data prepared directly from Cohen's bank statements, cancelled checks, and similar records. They were plainly intended for no eyes but those Cohen might designate. To pretend that such papers did not in substance reflect matter personal and private to Cohen, and to treat such papers as a source of information 'independent' of Cohen, would be to condone the very 'shifts and subterfuges' which the government calls upon us to condemn.

"We hold that as a general rule the Fifth Amendment privilege against self-incrimination permits a person in possession of potentially incriminating papers to decline to produce them in response to a summons; that the exception established by the Supreme Court's decisions in *Wilson*, [221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771] and *White* is limited to the records of impersonal organizations; and that if any other exceptions exist, based either upon the character of the papers or the nature of the claimant's possession, there is none which would bar assertion of the privilege by a claimant who is in possession, with the consent of an accountant, of work papers created by the accountant from information supplied by the person claim-

ing the privilege." *Id.* 388 F.2d at 471–472.

The conclusion is, therefore, inescapable that if the accountant's workpapers here were in the possession of taxpayers, who rightfully possessed them, rather than in their attorney's hands, the Fifth Amendment privilege against their production could properly have been asserted.

But the fact that the potentially incriminating documents were in the hands of taxpayers' attorney instead of being in their own possession does not in principle change the nature of the Fifth Amendment privilege, or its availability to taxpayers. Unquestionably attorney White rightfully possessed the workpapers on behalf of his clients and with their consent. They were delivered by the accountant to him at his request more than a year prior to issuance of the IRS summons against White for their production. The papers contained private information, all of which was secured by the accountant from taxpayers in connection with their income tax liability. There was no last-minute shifting of possession of papers. White was a duly qualified attorney for taxpayers under written power of attorney filed with the IRS. He held the workpapers in connection with his representation of taxpayers in the investigation of their income tax. As attorney for taxpayers, he had the same right of possession they had. *Couch* recognized this when the Court said, "[S]ituations may well arise where *constructive possession* is so clear or the relinquishment of possession is so temporary and insignificant as to leave the personal compulsions upon the accused substantially intact." (Emphasis supplied.) 409 U.S. at 333, 93 S.Ct. at 618.[1]

---

1. In its brief to the en banc court, the Government cites a number of cases which it contends support its position that workpapers belonging to the accountant are not subject to taxpayers' Fifth Amendment privilege, whether in their possession or their attorney's. Analysis of these cases shows that most of them were decided before the

Supreme Court announced in *Couch* the decisive rule of rightful possession rather than ownership as controlling.

A majority of the pre-*Couch* cases cited by the Government are likewise distinguishable on their facts. For example, in United States v. Widelski, 6 Cir., 1971, 452 F.2d 1, though the court expressly disagreed with

However, the majority apparently considers that taxpayers' lack of actual possession of the papers is controlling. But taxpayers were in constructive possession of the workpapers through their attorney, White, who possessed them for his clients and claimed the Fifth Amendment constitutional privilege against self-incrimination in their behalf. In *Couch*, the vital relationship was between accountant and client; in the present case, it is between attorney and client. There is no confidential accountant-client privilege under federal law and no state-created privilege has been recognized in federal cases. *Id.*, 409 U.S. at 335, 93 S.Ct. at 619. This is not the case in the attorney-client relationship. *See* United States v. Judson, 9 Cir., 1963, 322 F.2d 460, 462–463; United States v. Kovel, 2 Cir., 1961, 296 F.2d 918.

The majority opinion casts doubt upon the right of attorney White to assert the

the Ninth Circuit's holding in United States v. Cohen, *supra,* it ordered production of documents because the facts showed that the Intelligence Division had decided to drop the criminal aspects of the income tax matter and the case then involved only civil tax liability with the possibility of criminal prosecution being remote.

United States v. Egenberg, 3 Cir., 1971, 443 F.2d 512, involved accountant's papers pertaining to his clients' tax returns, but the clients did not object to having the records delivered to the Internal Revenue Service. Here, the accountant, under investigation himself, asserted the Fifth Amendment privilege in his own behalf as to these documents but the court held they were producible because they were business records of his clients and not personal records of the accountant.

In United States v. Zakutansky, 7 Cir., 1968, 401 F.2d 68, the Government sought production of an accountant's workpapers in his possession when the IRS summons was issued and thereafter turned over by the accountant to the taxpayer. The court applied the "rightful possession" test and held that under the circumstances the papers must be returned since they were not in the rightful possession of taxpayer when the IRS summons was served on the accountant. In *Zakutansky* the Seventh Circuit expressly approved the district court holding in United States v. Cohen, 9 Cir., 1967, 388 F.2d 464, and held that if the taxpayer had been in rightful and indefinite possession of his accountant's workpapers, though not owned by taxpayer, the privilege against self-incrimination would have applied. The case strongly supports our position rather than the Government's.

In re Grand Jury Investigation, Isadore H. Bellis, 3 Cir., 1973, 483 F.2d 961, a post-*Couch* case, the court affirmed an order for production of documents consisting of partnership records of a law firm of which Bellis was a member, holding that the partnership had a recognizable juridical existence apart from its members, and, therefore, that production was not an encroachment upon Bellis' personal rights.

In Bouschor v. United States, 8 Cir., 1963, 316 F.2d 451, the accountant's workpapers, ordered to be produced, had already been reviewed by Revenue Agents. Any privilege had thus been waived. The court also held, however, under the circumstances of the case, that an attorney in possession of documents could not assert his client's Fifth Amendment rights against self-incrimination.

In United States v. Cote, 8 Cir., 1972, 456 F.2d 142, the accountant's workpapers sought in possession of taxpayer's attorney had been transcribed onto amended returns which were filed by the taxpayers with the Government. The court held that the privilege had been effectively waived by the previous disclosure of the information.

In Deck v. United States, D.C.Cir., 1964, 339 F.2d 739, the Government obtained production of accountant's papers in possession of taxpayer's attorney but the facts showed that the accountant had demanded their return prior to service of IRS summons and that the attorney refused to return them though they were the accountant's property. Thus the defendant did not have rightful possession.

In re Fahey, 6 Cir., 1961, 300 F.2d 383, the situation was almost the same as that in *Deck, supra.* The accountant demanded return of his papers, and taxpayer and his attorney declined. There was, therefore, no rightful possession by respondents.

In United States v. Weingarden, 6 Cir., 1973, 473 F.2d 454, a post-*Couch* case, the court ordered production of accountant's records (copies of taxpayers' income tax returns) in possession of taxpayers' attorney, holding that taxpayers had no propriety or custodial interest in the records, and they could assert no constitutional protection in them. The case appeared to turn, however, on the issue of whether the sole purpose of the summons was for criminal prosecution. The district court, however, did not consider any question of privilege, nor did the court of appeals.

Fifth Amendment privilege on behalf of his clients, though it does not decide this question. *See* 477 F.2d at 761–762. It asserts that there is no evidence in the record that attorney White secured the papers on taxpayers' instructions or that they even knew that he had secured them. 477 F.2d at 763–764. This inference is impermissible under the circumstances. The original record contains taxpayer Roberts' motion to intervene in these proceedings (which was denied), and the proposed petition in intervention. The latter states in part:

"Intervenor resists the turn over by his agent White of the papers, constructively in Intervenor's possession, on the following grounds:

"A. The papers constructively in Intervenor's possession will or may tend to incriminate Intervenor and pursuant to the Fifth Amendment to the Constitution of the United States, Intervenor has a privilege against self-incrimination, the benefits of which he hereby claims. Possession of the documents in question are sufficient basis for intervenor's claim of Constitutional privilege. United States v. Cohen, 388 F.2d 464 (C.A. 9th 1967)."

It is recognized that an attorney may claim a Fifth Amendment right against self-incrimination on behalf of his clients when he is served with an IRS summons, provided his clients may themselves have asserted such a privilege. *See* United States v. Judson, 9 Cir., 1963, 322 F.2d 460, 463–465; Colton v. United States, 2 Cir., 1962, 306 F.2d 633, 639, cert. denied, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963); Brody v. United States, 1 Cir., 1957, 243 F.2d 378, 387 n. 5, cert. denied, 354 U.S. 923, 77 S.Ct. 1384, 1 L.Ed.2d 1438 (1957). *Contra*, Bouschor v. United States, 8 Cir., 1963, 316 F.2d 451, 458–459.

In United States v. Judson, *supra*, the court upheld an attorney's standing to raise his client's constitutional rights; it quoted with approval the following

from Application of House, N.D.Cal., 1956, 144 F.Supp. 95, 100, to that effect, as follows:

" 'Thus, on the question of the lack of standing of an attorney to raise the claim of privilege for his client although the client does not himself utter the words effectuating the claim, or is not himself physically present, the government cites no convincing authority. The government apparently seeks to establish a novel rule that unless the client himself participates in hearings such as the one held before the agent of the Internal Revenue Bureau, he waives his Constitutional rights. The government could thus put any taxpayer to the choice of attending hearings or investigations, sometimes carried on over considerable periods of time, or waiving his privilege against self-incrimination. Such a rule would accomplish nothing except to impose a heavy penalty in terms of time and money on those taxpayers who chose to assert their right against self-incrimination under the Constitution. The effective exercise of Constitutional rights should not be abridged by any such technical and onerous requirements as that.' " 322 F.2d at 465.

.    .    .    .    .    .

The *Judson* court continued:

"The raw logic of the matter compels us to agree with the court in Application of House, supra. Clearly, if the taxpayer in this case, or in House, had been subpoenaed and directed to produce the documents in question, he could have properly refused. The government concedes this. But instead of closeting himself with his myriad tax data drawn up around him, the taxpayer retained counsel. Quite predictably, in the course of the ensuing attorney-client relationship the pertinent records were turned over to the attorney. The government would have us hold that the taxpayer walked into his attorney's office unquestionably shielded with the Amendment's protection, and walked out with some-

thing less. The way was clear, according to appellant, for an enforcement officer to gather up the evidence which otherwise would have been beyond his reach. The taxpayer's only recourse would be the marathon footwork indicated in House." 322 F.2d at 466.

The proper rule in these cases emerges as follows: Rightful possession, actual or constructive, of potentially incriminating documents and papers, is the controlling test for assertion of the Fifth Amendment privilege against self-incrimination. Resolution of this question will depend on the facts determined on a case-by-case basis.[2] An attorney in possession of such papers on behalf of the taxpayer, may assert the privilege on behalf of his client.

The majority decision in this case substantially erodes the constitutional right of a taxpayer, suspected of criminal fraud, to claim Fifth Amendment protection against self-incrimination, impairs his Fourth Amendment right to be free of unreasonable search and seizure, and materially affects his right to counsel guaranteed by the Sixth Amendment.[3] The decision unwittingly helps the Government invade an individual's right of privacy in representation by his attorney and accountant in tax matters.

Regretfully, it is a step in the wrong direction.[4]

2. *Couch* recognized this when the Court said, "We do not, of course, decide what qualifies as rightful possession enabling the possessor to assert the privilege." 409 U.S. at 330 n. 12, 93 S.Ct. at 616 n. 12.

3. Taxpayer Louis D. Roberts has now been charged in an eleven-count indictment with wilful evasion of income tax for the years 1966–69, and with submitting a false offer in compromise pertaining to income tax (United States v. Louis D. Roberts, United States District Court, Southern District of Texas, Cr. No. 73–H–188, May 7, 1973).

4. See an interesting commentary on the majority panel decision herein, in the publication of the American Institute of Certified Public Accountants, *The Tax Adviser*, entitled "The IRS's right of access to the CPA's workpapers and client records," by Edward O. C. Ord, Esq. It reads as follows:
"Fifth Circuit's White decision. Most recently, a divided Fifth Circuit held a pre-summons pitchout by the accountant directly to the client's attorney did not permit the client to invoke the self-incrimination privilege.
"White facts. Workpapers (pertaining to the correctness of T's tax returns) were prepared and owned by A, T's independent accountant. A had transferred the workpapers to T's lawyer, L, under an agreement that he could keep them indefinitely but would return them upon completion of his representation of T. No 'recommendation for criminal prosecution' against T had been made either at the time the summons was issued or at the time enforcement was sought.
"The IRS brought suit to enforce a summons addressed to L in connection with a tax investigation of T. The summons directed L to produce the workpapers. In the enforcement proceeding L asserted T's Fifth Amendment privilege· as a bar to production of the workpapers.
"The District Court ordered enforcement of the summons, reasoning that T had no Fifth Amendment privilege in documents in his attorney's possession.
"The Fifth Circuit also rejected T's claim to the self-incrimination privilege. The Court concluded that there was no possession by the client, and that possession by the attorney did not result in constructive possession by, or a custodial arrangement with, the client. There was an excellent dissent, relying on, among other things, the Ninth Circuit's decision in *Cohen.*
"One wonders if the *White* decision is correct. The basic policy underlying the *Couch* decision is that the taxpayer gives records to a CPA so he can prepare tax returns for the client to file with the Government. Hence, the supporting records are intended to be removed from the client's private sanctuary; therefore, they are available for summons *in the hands of the CPA* since the client cannot assert the Fifth or Fourth Amendment defenses.
"However, when a client gives records to an attorney, especially during a criminal tax investigation, the records are given in confidential manner during an ongoing confidential relationship for the purpose of advising the client of his rights and defending the client from a possible prosecution. One could hardly say the documents are for publication. The relationship ·is just the opposite in nature from the accountant-client relationship which involves the preparation and filing of an income tax return. Since the reason for the rule

RONEY, Circuit Judge (concurring):

I concur in affirming the enforcement of the Internal Revenue summons with the understanding that, under the circumstances of this case, even the taxpayer could have been compelled to produce the workpapers owned and prepared by his accountant. If the Fifth Amendment would shield the taxpayer, were the papers in his possession, then I would hold that a combination of the attorney-client privilege and the Fifth Amendment would shield the same papers from compelled production when in the attorney's possession. Thus, I would not put the attorney in the shoes of the accountant, under *Couch*, but would put him in the shoes of his client, and uphold the historic and important attorney-client relationship by permitting the attorney to assert the taxpayer's constitutional privilege against compulsory self-incrimination. In this case, of course, where the taxpayer was not protected, there is no privilege to assert. It is my understanding that the panel opinion is not contrary to this view.

in the *Couch* case denying the Fifth Amendment defense is lacking in *White*, it would appear that the rule should not have been applied. The fact that the accountant gave the records directly to the attorney seems to be a transparent distinction.

"It also appears that an unlawful search and seizure defense should be available if a client gives records to an attorney in an income tax investigation for custody with the intent to keep them confidential since the attorney is ethically required to keep this confidence. Therefore, transfer to the attorney could be construed as being within the client's confidential sanctuary; hence, use of the summons constitutes an unlawful search and seizure.

"Finally, the *White* decision may run afoul of the constitutional right of counsel. Can a client be effectively represented by counsel during an income tax investigation if he gives the attorney records, or has his accountant do so, to study or evaluate at the client's peril? At a minimum, it puts a severe strain on attorney-client communications and advice during an income tax investigation. . . ."