**Leo MAGYAR and Magdalena Magyar,
Plaintiffs-Appellants,**

v.

**UNITED FIRE INSURANCE CO., et al.,
Defendants-Appellees.**

Nos. 86–5650, 85–6281.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 15, 1987.

Decided March 4, 1987.

As Amended on Denial of Rehearing
April 17, 1987.

Jay Lichtman, Los Angeles, Cal., for the plaintiffs-appellants.

Joseph Rimac, Los Angeles, Cal., for the defendants-appellees.

Before NELSON, KOZINSKI and NOONAN, Circuit Judges.

KOZINSKI, Circuit Judge:

We consider whether the district court erred in striking plaintiff's testimony as a sanction for giving nonresponsive and evasive answers.

### Facts

Leo Magyar, a septuagenarian immigrant from Eastern Europe, has lived in the United States for some 20 years. In April 1983 he brought suit in state court against United Fire Insurance Co. (United), which had issued him five health insurance policies. He alleged that United had wrongfully denied him benefits for stays in medical facilities in Hungary and Czechoslovakia. United, a New York corporation with its principal place of business in Illinois, removed the case to federal court. United filed its answer to the complaint in

June 1983. Neither side demanded a jury trial.

The first district judge to whom the case was assigned issued a pretrial order in November 1983 in which he set a preliminary date for a jury trial. By October 1984, however, the case was transferred to another judge who set the case for a bench trial in her final pretrial order. Trial began in June 1985 and the first witness was Mr. Magyar. His testimony was marred from the start by nonresponsive and argumentative answers. On the second day of testimony, United began its cross-examination and Mr. Magyar's testimony became even more nonresponsive. The district court finally warned Mr. Magyar that, if his answers continued to be nonresponsive, she would strike his testimony altogether. Mr. Magyar said he understood, but his very next answer was nonresponsive. *See* p. 4 n. 2 *infra.* True to her word, the district judge struck Mr. Magyar's testimony in its entirety. She then invited the Magyars' lawyer to proceed with the balance of plaintiffs' case. The lawyer stated she had no more witnesses to call. The court thereupon dismissed the action under Federal Rule of Civil Procedure 41(b).

### Discussion

■ The Magyars focus their attack on the court's decisions to strike Mr. Magyar's testimony and to dismiss the case.[1] Examining first the district court's decision to strike testimony, we note that accommodating conflicts between a party's desire to testify and "the need to insure truth through cross-examination is one of the trial judge's most important functions."

1. They also raise two other issues. The first is a supposed lack of complete diversity, based on United's removal petition which stated that "plaintiff is" a California resident instead of "plaintiffs are" California residents. The Magyars later stipulated that there was diversity. They are unable to show anywhere in the record (or outside it) that either Mr. or Mrs. Magyar is a resident of any state other than California, much less that one of them is a resident of Illinois or New York. The district court's finding that diversity of citizenship existed is not clearly erroneous.

*United States v. Panza,* 612 F.2d 432, 438 (9th Cir.1979), *cert. denied,* 447 U.S. 925, 100 S.Ct. 3019, 65 L.Ed.2d 1118 (1980). In performing that function, a trial judge must necessarily have the discretion to order a witness to answer a question; and, if the order is disobeyed, to invoke appropriate sanctions. As we held in *Panza,* our review of a district judge's exercise of this discretion is narrow; it reflects our realization that trial judges must give instantaneous rulings on close questions. *Id.* at 439; *see also United States v. Cardillo,* 316 F.2d 606, 613 (2d Cir.), *cert. denied,* 375 U.S. 822, 84 S.Ct. 60, 11 L.Ed.2d 55 (1963).

■ There are two limitations on the trial judge's authority to strike a witness' testimony. The first applies when the nonresponsive testimony is collateral to the key issues in the case. Under these circumstances, the right of cross-examination might be left sufficiently unimpeded that striking all of the witness' testimony could be an abuse of discretion. *See Panza,* 612 F.2d at 439; *see also Cardillo,* 316 F.2d at 613; 5 *Wigmore on Evidence* § 1391 n. 2 (Chadbourn ed. 1974). The second is that the judge must give fair warning to the witness before striking his testimony. *Panza,* 612 F.2d at 439.

■ The district court stayed well within these limitations and did not otherwise abuse her discretion. Although some of Mr. Magyar's nonresponsive answers did not concern issues central to his case, the incidents of nonresponsiveness and evasion were so frequent that they came to infect his entire testimony. Moreover, the transcript shows that the number of nonre-

The Magyars also complain that they were unfairly denied a jury trial. But, by waiting until 18 months after United served its answer to raise the issue, the Magyars failed to comply with Rule 38(b)'s requirement that a jury demand be made in writing within ten days of the final pleading served. By the terms of that rule this was a waiver. We see no merit in appellants' claim that the first pretrial order, in predicting a jury trial of seven to ten days, relieved them of their default. The fact remains that they did not comply with Rule 38(b) and the district judge was well within her discretion in conducting a bench trial.

sponsive answers increased significantly as cross-examination wore on. The court first tried to deal with the problem by directing Mr. Magyar to answer responsively and by striking individual nonresponsive answers. When this did not work, she gave him clear warning that she would strike his entire testimony if he did not reform.[2]

We are satisfied, on reviewing the record, that the district judge took into account that Mr. Magyar's ability to testify was affected by his age, and by the fact that English was not his native tongue. The record shows that she exercised considerable patience before even warning him. After two days of direct observation, however, she certainly had seen and heard enough to decide whether Mr. Magyar's answers were unresponsive because of inability or unwillingness. Her conclusion that he was simply being stubborn or evasive is supported by the record. We find no abuse of discretion.

■ The district court's decision to dismiss the case followed quickly. It came without warning and, if the dismissal had been a sanction for failure to comply with a court order, might have amounted to an abuse of discretion. *See Industrial Bldg.*

*Materials, Inc. v. Interchemical Corp.*, 437 F.2d 1336, 1338–39 (9th Cir.1970) (rule 41(b) dismissal for failure to comply with court order should be accompanied by consideration of less drastic alternatives). However, the record shows that plaintiffs were scheduled to present at least one other witness after Mr. Magyar. In striking Mr. Magyar's testimony, the district court therefore had a reasonable expectation that there would be more evidence forthcoming. When plaintiffs' counsel declined to produce it, the record was left devoid of evidence supporting the Magyars' case. Cases like *Industrial Building*, which involve rule 41(b) dismissals as direct sanctions for failure to obey court orders, are therefore off point. Here, the district court's dismissal was premised on the second sentence in 41(b), which allows dismissal "on the ground that upon the facts and the law the plaintiff has shown no right to relief." With nothing in the record to support plaintiffs' case, United was clearly entitled to a dismissal. As required by rule 41(b), the district court's dismissal order was supported by findings of fact and conclusions of law. *See Industrial Bldg.*, 437 F.2d at 1339.

2. THE COURT: Do you decline to answer the attorney's question, Mr. Magyar?
    THE WITNESS: I am—I not denying anything. I just asking to explain the merit of this question. I don't understand the merit of the question so I don't want to mislead the court.
    THE COURT: I think this plaintiff is not responding to counsel's questions and I am about to bar further testimony by him and strike his direct altogether unless he answers counsel's question.
    You put this question to the witness one more time and if he declines to reply, I am going to strike all of his testimony.
    Listen very carefully, Mr. Magyar.
    THE WITNESS: Yes.
    BY MISS REILLEY:
    Q Mr. Magyar, I have asked you to refer to exhibit 107 which is an application dated by you on May 27, 1978. And it is an application for insurance with Occidental Life Insurance Company of California.
    In response to question no. 3 which asks: "Please answer each question and explain all yes answers below: Have you or any family member to be insured had medical attention in the past five years?"

And you responded no, correct?
    A I see this—they are here some impairments listed and the name of the physicians was indicated too.
    Q Mr. Magyar—
    A I can answer the question. I signed this application. I signed this application.
    Q And did you in response to the question have medical attention in the past five years, did you check the no box?
    A The check mark is on no, but the answer—please print the address indication is given about the medicare history and about the—
    THE COURT: I've had it. Mr. Magyar, you may step down, sir.
    I am not going to sit through a trial where you refuse to follow the court's orders to answer the questions.
    THE WITNESS: I answered yes.
    THE COURT: No, you did not, sir. You may step down. You have given nothing but nonresponsive answers here as suits your purpose and the court is not required to waste its time to listen to your nonresponsive answers.
    You may step down, sir.

## Conclusion

The judgment of the district court dismissing plaintiffs' case is affirmed.